ENTERPRISE ENERGY CORP., et al., Plaintiffs,

v.

COLUMBIA GAS TRANSMISSION CORPORATION, Defendant.

No. C2–85–1209.

United States District Court, S.D. Ohio.

June 18, 1991.

---

242

Duke W. Thomas, John C. Elam and James Hedden, Columbus, Ohio, for plaintiffs.

Daniel W. Costello, Columbus, Ohio and John E. Beerbower, New York City, for defendant.

## OPINION AND ORDER

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to the Joint Motion for Final Approval of Class Action Settlement under Federal Rule of Civil Procedure 23(e).[1] Further-

more, before the Court there is a motion by plaintiffs for an award of attorney's fees and expenses to class counsel and a motion by plaintiffs for an order to granting class representative incentive awards. The Court will address each of these matters *seriatim.*

## FACTS

On July 26, 1985, a class action lawsuit was filed on behalf of gas producers ("Class Members") that had contracts with the defendant Columbia Gas Transmission Corporation ("Columbia Gas"). The contracts between the parties essentially provided the price to be paid for each unit of natural gas (MMBtu) as the maximum lawful price during the month of delivery under the Natural Gas Policy Act of 1978 ("NGPA"). Among the various provisions in the contract allowing for adjustment in price is a the "Cost Recovery Clause" ("CRC"). The clause provides as follows:

*Cost Recovery.* Notwithstanding any other provisions of this Agreement, if any order, opinion, enactment or regulation of the Federal Energy Regulatory Commission, or any other governmental authority (Federal or State), or of any court, may have the effect, either directly or as a precedent, of preventing Buyer's full recovery of any portion of the Purchase Price paid or to be paid Seller, then Buyer with the next monthly billing cycle after the date of such order, opinion, enactment or regulation, or at such later date as it may elect, may in Buyer's judgment enable Buyer to recover its full costs. In such case, the price provisions applicable to Seller's deliveries of gas to Buyer shall be deemed modified as appropriate to assure Buyer its full-cost recovery. Seller hereunder shall not, however, be liable to Buyer for any overpayment hereunder prior to the date of such order, opinion, enactment or regulation.

---

1. Rule 23(e) provides as follows:
 **Dismissal or Compromise.** A class action shall not be dismissed or compromised without the approval of the court, and notice of

the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Pursuant to the above-cited clause, on July 11, 1985, Columbia Gas sent a letter to all Class Members announcing that it was invoking the CRC and that it would be adjusting the purchase price of the natural gas downward. The letter explained that Columbia Gas believed that two opinions of the Federal Energy Regulatory Commission ("FERC"), specifically, nos. 204 and 204–A, would have the effect, either directly or as a precedent, of preventing Columbia Gas' full recovery of a portion of the gas purchase specified in the contracts.

Plaintiffs claimed that these FERC opinions do not have the effect of preventing Columbia Gas' full recovery of the gas purchase price, and as such, the CRC cannot be invoked. Instead, the Class Members interpreted the FERC opinions to permit Columbia Gas to pass through the increased costs to the consumers.

By an Order entered by this Court on February 21, 1986, subsequently amended on March 1, 1991, a class was certified by this Court consisting of "[a]ll owners, operators and producers of natural gas producing wells in the Appalachian region (New York, Pennsylvania, West Virginia, Kentucky, Maryland, Virginia and Ohio) who are parties to gas purchase contracts with Columbia Gas Transmission Corporation entitling them to receive the maximum lawful price or a deregulated price under the NGPA ... and against whom Columbia has invoked a price reduction for amounts due under the contracts". The plaintiff class involved approximately 852 contracts and 2163 Class Members.

The parties, over a period of six years, engaged in substantial discovery, including the use of interrogatories, requests for documents, and depositions. This discovery was then utilized by the respective parties in a variety of motions, including dispositive motions.

Pursuant to a motion for summary judgment filed by the Defendant, the Court, in an Opinion an Order dated September 15, 1989, held that the there existed no genuine issue of material fact as to whether Columbia Gas did in fact invoke the CRC in July of 1985, March of 1987 and September of 1987. This Court further held that there was a "prevailing opinion, order, enactment, or regulation out of FERC ... which Columbia [Gas] could rely upon so as to meet the language prerequisite found within the CRC provision of the contract." In short, the Court found that Columbia Gas could rely upon the 204 and 204–A cases and other decisions, settlements, and FERC regulatory orders existing at the time in the industry to meet the contractual language prerequisite requirement in order to invoke the CRC.

This Court further found, however, that there existed "a genuine issue of material fact as to whether Columbia Gas had objectively acted in good faith in their decision to invoke the 1985 and 1987 CRCs"; whether Columbia Gas had "subjectively and with honesty in fact decided to invoke the CRCs"; whether Columbia Gas had ostensibly utilized the 204 cases and other decisions; and whether the prices set following the invocations were just and reasonable. In making the above findings, the Court had granted in part and denied in part the defendants' motion for summary judgment.

On June 25, 1990, the Plaintiff Class Members filed a motion for partial summary judgment. In an Opinion and Order dated August 30, 1990, the Court denied the dispositive motion. It became apparent at that time that the resolution of the case would only come through a negotiated settlement or a trial.

The issues of liability and damages were bifurcated for trial. Additionally, only a portion of the liability issue has been subject to discovery and was set for trial in September of 1990. Consequently, substantial litigation and discovery could remain prior to any final determination of the parties' rights.

The parties engaged in a non-binding mediation proceeding during the first half of 1990. Following extensive briefing and preparation, the mediation lasted for almost one week in Columbus during June of 1990. In spite of the participants' efforts, the parties were unable to negotiate a settlement of this lawsuit during the mediation process.

After the mediation, both sides again continued to prepare for an early September 1990 trial. This preparation led to settlement negotiations beginning in September of 1990. These settlement negotiations lasted several months and at the request of both parties included the supervision of the Court.

After almost six months of concerted negotiations by Class Counsel, Class Representatives and Columbia, a Stipulation of Proposed Class Action Settlement (the "Settlement") was reached in late February of 1991. This Settlement was then filed with the Court. This Court preliminarily approved the Settlement on March 15, 1991, and scheduled a fairness hearing for May 23, 1991.

Contemporaneous with its preliminary approval of the proposed Settlement, this Court approved the form of Notice proposed by the parties, and ordered that the Notice be sent by Class Counsel to each Class Member, at the Class Member's last known business address, on or before March 22, 1991.

On March 22, 1991, pursuant to this Court's Order, Class Counsel mailed the Notice concerning the proposed Settlement to the approximately 2,163 Class Members having interests in the 852 Class Member contracts involved in this case. Thereafter, on April 19, 1991, pursuant to the Order and Notice, Class Counsel mailed data concerning each of the 852 contracts to each of the Class Members who had an interest in any such contract. This data set forth the necessary information to enable the Class Member to compute the contract's share of the Settlement monies.

The Order of this Court and the Notice sent to the Class Members provided that if a Class Member wanted to object to any aspect of the Settlement, a Class Member was required to file a Notice of Objection with this Court on or before May 1, 1991, with copies of such Notice of Objection also served upon Class Counsel and defendant's counsel. If a Class Member had any objection or corrections to the accuracy of the data, the Class Member was to advise Class Counsel in writing on or before May 10, 1991.

Twenty (20) Notices of Objection were filed with the Court. All but two of those submissions presented comments on or challenges to the data or calculations concerning the Settlement or objections to the proposed exclusion of all or some part of a Class Member contract from the benefits of the Settlement. As of the date of the hearing on May 23, 1991, there was only one objection (representing two contracts) to the fairness, reasonableness or adequacy of the Settlement.

At the time of the hearing only two substantive objections were voiced. One objection simply related to the amount of attorney's fees requested, and the second related to the entire settlement agreement.

Attorney Richard G. Morgan, representing Seneca Upshur Petroleum Company ("Seneca Upshur"), voiced an objection to the amount of attorney fees requested by Class Counsel. He suggested a fee of $4.5 million would be more appropriate. It was his position that the only funds this Court should consider in determining the reasonableness of the attorney's fees requested by Class Counsel was the $30 million payment. He further suggested that the Court should award Class Counsel 15% of the $30 million. It was from these calculations that he derived the $4.5 million figure.

The second significant objection related to the entire settlement agreement, including the request for attorney's fees and class representative incentive awards. Attorney Brian Peterson appeared before the Court on behalf of his client, Johnson Petroleum Company, ("Johnson Petroleum").[2] Johnson Petroleum takes the position that "the proposed settlement is not fair, reasonable and adequate in that it fails to adequately compensate the Class Members

---

2. Attorney Peterson's representation includes the class members, Russell V. Johnson, Jr., Russell V. Johnson, Jr., d/b/a Johnson Petroleum Company, Rockwell Petroleum Company, Mark R. Worl, d/b/a Rockwell Petroleum Company and Rockwell Petroleum Company. For clarity, the group will be referenced as "Johnson Petroleum".

for past claims, ... does not adequately assure the Class Members of reasonable future gas prices, [and] does not adequately assure the Class Members of the availability of transportation, yet extracts from the Class Members substantial contract concessions with respect to certain provisions of contracts which are not the subject matter of this action." See Johnson Petroleum's objection, Doc. 167 at p. 1.[3]

Johnson Petroleum further argues that the request for attorney's fees is excessive, "because the legal issues to be resolved were not unreasonably complex, because counsel did not assume a high degree of risk and because the settlement does not necessarily have a present value of Fifty–Six Million Dollars ($56,000,000.00) ..." Memorandum in Support, Doc. 167 at p. 3.

The first issue now before this Court is whether to approve or reject the Settlement based upon its fairness, reasonableness and adequacy.

## I. JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. *The Legal Standard*

Court approval is required in order to settle a class action. Rule 23(e) provides as follows:

A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

■ In granting final approval to a class action settlement, the Court must follow a three step process: First, the Court must preliminarily approve the proposed settlement; Second, members of the class must then be given notice of the proposed settlement; and Third, a hearing must be held,

after which the Court must decide whether the proposed settlement is fair, reasonable and adequate. *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir.1990); *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir.1986); *Williams v. Vukovich*, 720 F.2d 909 (6th Cir.1985); *Stotts v. Memphis Fire Department*, 679 F.2d 541 (6th Cir.), *rev'd on other grounds, sub nom. Firefighters Local Union No. 1784 v. Stotts, et al.*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1982); *Bronson v. Board of Education of the City School District of the City of Cincinnati*, 604 F.Supp. 68 (S.D.Ohio 1984); *Thompson v. Midwest Foundation Independent Physicians Ass'n*, 124 F.R.D. 154 (S.D.Ohio 1988).

■ In determining whether a proposed class action settlement is fair, reasonable and adequate, this Circuit has identified several factors to be considered. They include: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by class members; and (7) the public interest. *Vukovich*, 720 F.2d at 922; *Bronson*, 604 F.Supp. at 73; *Thompson*, 124 F.R.D. at 157.

■ In determining the fairness, adequacy and reasonableness of the proposed Settlement, this Court need not reach ultimate conclusions of fact regarding the merits of the case or decide the underlying issues of law. *Williams*, 720 F.2d at 921; *Thompson*, 124 F.R.D. at 157; *Bronson*, 604 F.Supp. at 73–74. Whether a settlement is fair, reasonable and adequate must be evaluated by examining the settlement

---

**3.** Johnson Petroleum also argues that the Representative Plaintiff's failed to properly notify them, and that the delay in receiving the documentation necessary to make a reasonable and informed decision as to the settlement, deprived them of adequate notice and an opportunity to prepare adequate timely objections.

The Court addressed this issue at the hearing in conjunction with the motion of Johnson Petroleum for a continuance of the hearing. The Court was not impressed with the eleventh hour filing of the motion for a continuance and skeptical as to any potential notice problems. Accordingly, the Court can see no reason to deviate from the original denial of the continuance.

in its entirety and not as isolated components. *Thompson*, 124 F.R.D. at 159; *Bronson*, 604 F.Supp. at 78. The Court does not have the power to change the terms of the proposed settlement which it may not like, "only the parties, during arms-length negotiations ... have the power to agree upon changes". *Bronson*, at 73.

■■■ Once preliminary approval has been granted, a settlement is presumptively reasonable and an objector must overcome a heavy burden to prove that the settlement is unreasonable. *Williams*, 720 F.2d at 921; *Stotts*, 679 F.2d at 551; *In re Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 370 (S.D.Ohio 1990); *Thompson*, 124 F.R.D. at 156; *Bronson*, 604 F.Supp. at 71. In considering objections to a settlement, approval should not be denied "merely because some class members object to it". *Thompson*, 124 F.R.D. at 159; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir.1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976); *Bronson*, 604 F.Supp. at 73; *cf. Clark Equip. Co. v. International Union, Allied Indus. Workers*, 803 F.2d 878, 880 (6th Cir.1986) (acceptance of settlement over class representative's objection not necessarily abuse of discretion). It should be remembered that a settlement "is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed". *Williams*, 720 F.2d at 922. "Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class." *Id.*

The law generally favors and encourages the settlement of class actions. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir.1981); *Thompson*, 124 F.R.D. at 157.

### B. *Findings and Conclusions Concerning the Settlement*

■■■ The Court has already concluded, pursuant to its March 15, 1991 Order granting preliminary approval, that the Settlement was the result of arms-length negotiations and was not collusive or illegal. This Court has personally had an opportunity to administrate, supervise, and offer limited participation in the negotiations which brought about the settlement agreement proposed by the parties. It is apparent from those observations that the Settlement is the by-product of an arm's length negotiation between the parties.

The Notice of the proposed Settlement, the fairness hearing and related matters were completed, are sufficient under Rule 23 of the Federal Rules of Civil Procedure, and allowed Class Members a full and fair opportunity to consider the proposed Settlement and to develop a response. *Vukovich*, 720 F.2d at 921.

The Court finds Johnson Petroleum's argument that the necessary information was not before them in a timely fashion, thus they did not have a sufficient amount of time to evaluate the settlement and decide whether to objection, to be unpersuasive. The information was sent to Johnson Petroleum as provided for in this Court's Order preliminarily approving the settlement and setting parameters for notification of the class. The specific additional information requested by Johnson Petroleum was supplied in a timely fashion and the eight days of preparation were more than adequate, especially given Johnson Petroleum's stated position that the instant case is not "unreasonably complex".

This Settlement provides substantial, immediate economic benefits to all Class Members. It also provides economic and non-economic benefits for Class Members in their continuing contractual relationships with Columbia. Although there has been some disagreement as to the magnitude of the future benefits and such benefits are necessarily to some extent speculative, no Class Member has asserted that the changes in future rights under the contracts result in a net detriment to the Class as a whole or to any Class Member, and the Court finds based upon the record that the value of the future benefits provided by the Settlement are substantial.

The Court finds that while this case has already been in litigation for six years, if a

settlement cannot be achieved considerable litigation remains. As such, the Settlement provides immediate value to the Class and minimizes the costs which plaintiffs must otherwise incur in moving forward and potentially obtaining a successful result.

Defendant's motion for summary judgment raised difficult, close questions. Although the Court concluded that there were genuine issues of material fact remaining for trial, there is no assurance that plaintiffs would be able to sustain their burden with respect to those issues. As such, a favorable or successful result is merely a potential and not unequivocal.

This Court would be the ultimate finder of fact if the case went to trial. Furthermore, this Court has had the opportunity to review and rule on dispositive motions pending in this action. As a result, the Court is in a strong position to assess and understand the uncertainties about the ultimate outcome of a trial of all issues.

Based only upon a comparison of the economic and non-economic benefits of the Settlement with the likely outcome of the litigation on the merits and the relief that would be obtained, the Court concludes that this Settlement is fair, reasonable and adequate.

This action has already entailed the expenditure of substantial private and judicial resources. While one segment of the liability issues was set for trial, an even larger portion would need to be tried in the future in addition to any damages issues should the class prevail on liability.

The parties have carefully and fully analyzed the strengths and weaknesses of their positions in light of the extensive discovery already completed.

The attorneys that represent the parties have litigated complex class actions and have had extensive litigation experience. They are able to evaluate the strengths and weaknesses of this case. Counsel for both sides represent to the Court that it is a fair, reasonable and adequate resolution of the present controversy.

The Court finds that although this action was not near a conclusion, extensive discovery and motion practice have already occurred. In addition, the parties and counsel had engaged in a lengthy mediation proceeding in an effort to resolve the dispute. As such, the parties and their counsel, as well as this Court, are in good positions to evaluate the strengths of each side's case and the risks of continued litigation.

The Court concludes that the endorsement of the Settlement by counsel for both sides, in light of the extensive discovery and other pretrial activity, supports the fairness, adequacy and reasonableness of this Settlement. *Williams*, 720 F.2d at 922–23.

In addition, the Class Representatives were knowledgeable, experienced businessmen with significant economic stakes in the litigation. They participated actively in the negotiation of the Settlement and agreed to accept the terms thereof.

The proposed Settlement took almost six months to negotiate. These settlement negotiations were only successful after a week long mediation session and almost six (6) years of litigation. It is clear to this Court from the time and effort involved that this Settlement represents an arms-length, hard bargained settlement. Both parties were confident of their positions and effectively asserted their rights. It was only after repeated efforts that the parties were able to reach this Settlement.

The fact that there is only one objection to the terms of the Settlement (representing two of the 852 contracts in the class action) is a factor that weighs heavily in favor of approving the proposed Settlement. *See Seagoing Uniforms Corp. v. Texaco, Inc.,* [1989–1990 Transfer Binder], Fed.Sec.L.Rep. (CCH) ¶ 94, 791, 1989 WL 129691 (S.D.N.Y.1989). Johnson Petroleum has the burden to demonstrate that the Settlement is unfair, inadequate or unreasonable. *See Stotts,* 679 F.2d at 554; *Bronson,* 604 F.Supp. at 78.

To meet this burden, Johnson Petroleum has essentially forwarded an argument that the case is valued at $115 million and the amount of the settlement merely represents a 26% recovery. Johnson Petroleum

states in a conclusory fashion that the Class should get more. This conclusion is made without the benefit of attending the numerous settlement discussions and makes absolutely no reference to the prior opinions of this Court wherein it was made abundantly clear that there exists a very real potential that the Class could come away from a long expensive trial with nothing. Thus, this Court finds that Johnson Petroleum has failed to carry its burden.

This Court finds that the Settlement serves the public interest. It will avoid a time-consuming and expensive trial. In addition, it will eliminate the possibility of any time-consuming and expensive appeals. The Settlement results in a final and complete resolution of all of the issues raised by the Class Members in the litigation.

The Court concludes that the stage of the proceedings, the amount of discovery completed, the opinion of Class Counsel, the nature of the negotiations, the lack of objections of Class Members and the public interest all support the conclusion that the Settlement taken as a whole is fair, reasonable and adequate.

For all of the foregoing reasons, the Court hereby grants final approval of the Settlement.

## II. MOTION FOR AN AWARD OF AT-TORNEY'S FEES AND EXPENSES TO CLASS COUNSEL

In a filing made herein on April 12, 1991, Class Counsel have applied for an award of attorneys' fees to Class Counsel and an award reimbursing Class Counsel for actual expenses incurred in the course of this litigation to be paid from the common fund of over $32 million which has been created for the benefit of the class in this litigation. Class Counsel is requesting $5 million in total attorneys' fees, with $2.5 million of these fees to be paid at the time of final approval of the Settlement, and with the remaining $2.5 million to be paid in March of 1992 from the $15 million to be deposited by Columbia at that time into escrow. Class Counsel has reserved the right to file a supplemental application for attorneys' fees if this order is appealed.

In addition, Class Counsel has requested an award reimbursing them for actual expenses incurred totalling $164,580.05 for the period July 1985 through March 31, 1991, which amount would be paid out of the interest earned on the $17 million deposited into escrow prior to final approval of this Settlement. It is understood that Class Counsel will file one or more additional applications for reimbursement of actual expenses incurred from April 1, 1991 until the final disbursement of Settlement monies is made in 1992.

■ Class Counsel's application is governed by the legal standards for awards of attorneys' fees and expenses in "common fund" situations. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478–79, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); *Smillie v. Park Chemical Co.*, 710 F.2d 271, 275 (6th Cir. 1983); *Basile v. Merrill Lynch, Pierce, Fenner & Smith*, 640 F.Supp. 697, 699–700 (S.D.Ohio 1986). It is well-settled that a lawyer who recovers a common fund for the benefit of a class of persons in commercial litigation is entitled to reasonable attorneys' fees and expenses payable from that fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478–79, 100 S.Ct. 745, 749–50, 62 L.Ed.2d 676 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391–92, 90 S.Ct. 616, 625–26, 24 L.Ed.2d 593 (1970); *Smillie v. Park Chemical Co.*, 710 F.2d 271, 275 (6th Cir.1983); *Basile v. Merrill Lynch, Pierce, Fenner & Smith*, 640 F.Supp. 697, 699–700 (S.D.Ohio 1986).

■ An award of attorneys' fees and expenses lies within the sound discretion of the trial court. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), *cert. denied*, 422 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700 (1975). The factors relevant to an award of attorneys' fees from a common fund in this Circuit have been clearly established. As the Sixth Circuit stated in *Smillie*, the relevant considerations are:

(1) the value of the benefit rendered to the class;

(2) society's stake in rewarding attorneys who produce such benefits in

order to maintain an incentive to others;

(3) whether the services were undertaken on a contingent fee basis;

(4) the value of the services on an hourly basis;

(5) the complexity of the litigation; and

(6) the professional skill and standing of all counsel.

710 F.2d at 275; *accord Ramey,* 508 F.2d at 1196; *Basile,* 640 F.Supp. at 700; *see also Thompson v. Midwest Foundation Independent Physicians Ass'n,* 124 F.R.D. 154, 162 (S.D.Ohio 1988). An examination of each of these factors as applied to the present case supports approval of Class Counsel's application.

 The value of the benefit rendered to the class has been amply demonstrated in the record. The Settlement provides substantial economic and non-economic benefits to the class. The Settlement includes a common fund in excess of $30 million for the benefit of the class with respect to those claims asserted during the period of approximately July 10, 1985, through January 10, 1991. Class Counsel has also created a common fund of about $2 million for gas produced from January 10, 1991, to May 10, 1991. Class Counsel has obtained future benefits for members of the class in the nature of increased prices for gas to be produced and sold to Columbia as well as reduced transportation and gathering charges concerning the transportation of this gas in the future. Class Counsel has estimated these future benefits as having a present discounted value of approximately $24.65 million. Although the one objector contends that this future benefit value estimate of $24.65 million is too high, and while the Court recognizes that any effort to value future benefits is necessarily somewhat speculative, the Court does conclude that there is substantial value to the class contained in the future benefits provided by the Settlement.

If attorneys are to be encouraged to handle litigation of this nature, attorneys must be awarded fair and reasonable compensation for their efforts. Class Counsel accepted this representation on a contingent fee basis and would not have recovered any fees for their services if they had not been successful. The contingency fee risk of non-payment in this action was significant because the likelihood of a class recovery is far from clear based upon the difficult, close questions raised in defendant's motion for summary judgment.

The "lodestar" amount of hourly charges at current rates incurred by Class Counsel through April 30, 1991 is $1,828,037.90 and Class Counsel estimates that they will incur approximately $220,000 in additional charges implementing the Settlement from and after May 1, 1991—for a total lodestar amount at current rates of approximately $2.05 million. The "lodestar" amount of hourly charges computed on the basis of Class Counsel's rates being charged when the services were rendered totals $1,681,-580.15 through April 30, 1991—for a total lodestar value, when the $220,000 estimate is added concerning future charges for implementation of the Settlement, of approximately $1.9 million.

It is clear to this Court that this litigation was extremely complex and vigorously defended. The legal and factual issues were novel, and the subject matter itself was multifarious.

Finally, all counsel, Defense Counsel and Class Counsel alike, exercised the highest degree of skill and competence in this proceeding. It should be noted that the attorneys and their respective law firms enjoy the highest degree of respect in their communities. Furthermore, they have an outstanding reputation both locally and nationally.

As previously stated, only two objections were made to the request for an award of $5 million in Class Counsel fees. One objector, Johnson Petroleum, recommended $4 million as an appropriate award and the other objector, Seneca Upshur, recommended $4.5 million.

Attorney fee awards in common fund cases are often calculated as a percentage of the fund created. The percentages awarded in common fund cases typically range from 20 to 50 percent of the common

fund created. *See, In re Cincinnati Gas & Electric Co. Securities Litigation*, 643 F.Supp. 148, 150 (S.D.Ohio 1986); *In re Warner Communications Securities Litigation*, 618 F.Supp. 735, 749–50 (S.D.N.Y.1985). Here, Class Counsel are applying for an award of fees in the total amount of $5 million, which is approximately 8.8% of the $56.65 million estimated present value of the total Settlement or alternatively, approximately 15.6% of the $32 million current cash portion of the Settlement.

Class Counsel's attorney fee application is well in line with, and in fact is lower than, the percentages of the common fund approved as attorney fee awards in numerous other reported common fund cases in the Sixth Circuit and elsewhere. *See, In re Cincinnati Gas & Electric Co. Securities Litigation*, 643 F.Supp. 148 (S.D.Ohio 1986) (fee of 18% of common fund); *Basile v. Merrill Lynch, Pierce, Fenner & Smith*, 640 F.Supp. 697 (S.D.Ohio 1986) (fee of 26.3% of common fund); *Schwartz v. Novo Industries A/S*, 119 F.R.D. 359 (S.D.N.Y.1988) (25% of common fund); *Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D.Cal.1988) (25% of common fund); *Meyer v. Citizens and Southern National Bank*, 117 F.R.D. 180 (M.D.Ga.1987) (30% of common fund); *Northwestern Fruit Co. v. A. Levy & J. Zentner Co.*, 117 F.R.D. 670 (E.D.Cal.1987) (29% of common fund); *Levit v. Filmways, Inc.*, 620 F.Supp. 421 (D.Del.1985) (33⅓% of common fund).

Another method for computing an appropriate attorney fee award in a common fund case is to apply a "multiplier" to the "lodestar" amount. In *In re Cenco, Inc. Securities Litigation*, 519 F.Supp. 322 (N.D.Ill.1981), the Court found that a multiplier of four times the "lodestar" amount was appropriate. In *In re Beverly Hills Fire Litigation*, 639 F.Supp. 915 (E.D.Ky. 1986), the Court found that a multiplier of five was appropriate.

In the present case, the total lodestar amount at current rates is approximately $2.05 million and at historic rates is approximately $1.9 million—for a multiplier of 2.4 or 2.6, respectively, concerning Class Counsel's $5 million attorney fee request. This 2.4–2.6 range of multiplier which Class Counsel is requesting in this litigation to support its $5 million attorney fee request is reasonable and conservative when compared to similar cases.

Based upon the foregoing, this Court finds that Class Counsel's application for an attorney fee award of $5 million is fair, reasonable, and warranted.

Class Counsel also seeks an award of $164,580.05 for reimbursement of actual expenses incurred from July 1985 through March 31, 1991, plus reimbursement for all additional expenses incurred during the period from April 1, 1991 until the final distribution of the second Settlement installment is made in 1992. There are no objections to this request. Based upon the undisputed evidence in the record, these expenses are reasonable and Class Counsel is entitled to their full recovery of these expenses from the common fund.

### III. MOTION FOR CLASS REPRESENTATIVE INCENTIVE AWARDS

The six Class Representatives in this case (Enterprise Energy Corp., Beldon & Blake Corporation, Allstates Oil and Producing Co., Inc., Energy Development Corp., Edco Drilling and Production, and The Clinton Oil Company) have also applied to this Court for class representative incentive awards in the amount of $50,000 each, for a total of $300,000 of incentive award payments.

 Courts approve incentive awards to representatives of class members where the representatives have earned the awards. The Courts in this circuit review the following factors when considering a request for class representative incentive awards: (1) the action taken by the Class Representatives to protect the interests of Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

In this case, the Class Representatives have taken actions which have protected the interests of the Class Members and which have resulted in a Settlement that provides substantial economic and non-economic benefits for the Class Members.

The Class Representatives entered into a contingent fee arrangement with Class Counsel which obligated them to pay Class Counsel for all expenses incurred in the pursuit of this litigation, which expenses amounted to $164,580.05 through March 31, 1991 and which will exceed this amount before the Settlement is final.

The Class Representatives have devoted a substantial amount of time and effort and have incurred unreimbursed expenses in pursuing this litigation.

Only one objection was made to the request for Class Representative incentive award, by Johnson Petroleum, and they recommended $25,000 for each Class Representative.

The Court finds that the Class Representatives have satisfied the requirements for an award of a class representative incentive fee, and the requested incentive awards in the amount of $50,000 for each of the six Class Representatives, or a total of $300,000 of incentive fee awards, is fair, reasonable and warranted.

Pursuant to the above findings of the Court IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows, that:

a. Class Members, excluding all persons who have been properly excluded from the class, pursuant to Rule 23(c)(2) Federal Rules of Civil Procedure, are:

All owners, operators and producers of natural gas producing wells in the Appalachian Region (New York, Pennsylvania, West Virginia, Kentucky, Maryland, Virginia and Ohio) who are parties to Gas Purchase Contracts with Columbia Gas Transmission Corporation ("Columbia") entitling them to receive the Maximum Lawful Price ("MLP") or a deregulated price under the Natural Gas Policy Act ("NGPA") with respect to § 102, § 103, § 104, § 105, § 107(c)(4), § 107(c)(5), § 108 and/or § 109 NGPA categories gas, and against whom Columbia has invoked a price reduction for amounts due under the contracts by notice similar to the July 11, 1985, March 5, 1987, August 28, 1987 and/or October 12, 1987 letters from Columbia, at any time during the period commencing on or about July 10, 1985 and ending on or about January 10, 1991.

b. This Court has preliminarily approved the Settlement on March 15, 1991, and Notice to the Class Members required by Rule 23(e) of the Federal Rules of Civil Procedure has been given in an adequate and sufficient manner, was the best notice practicable under the circumstances, and complied in all respects with Rule 23 and due process.

c. The proposed Settlement is in all respects fair, adequate, reasonable and is in the best interests of the Class Members and is hereby finally approved.

d. Class Counsel's application for an award of attorneys' fees in the amount of $5 million and for reimbursement of actual expenses incurred in the amount of $164,580.05 through March 31, 1985 is hereby granted. $2.5 million of the attorneys' fees and $164,580.05 of non-reimbursed expenses shall be paid from the $15 million portion of the common fund deposited in escrow on March 21, 1991 and from the interest thereon as well as from the interest on the approximately $2 million common fund for gas produced from January 10, 1991, to May 10, 1991. The remaining $2.5 million in attorneys' fees and any remaining additional expenses incurred by Class Counsel after March 31, 1991 shall be paid from the second $15 million portion of the common fund to be deposited on March 23, 1992 and when these monies are distributed. Class Counsel is entitled to seek recovery of its additional expenses incurred after March 31, 1991 from the common fund by filing with this Court an appropriate application(s) for such reimbursement accompanied by an affidavit which outlines the expenses for which reimbursement is sought.

e. The incentive awards requested by the Class Representatives are fair and reasonable and the incentive award application in the total amount of $300,000 is hereby granted. Each Class Representative (i.e. Enterprise Energy Corp., Beldon & Blake Corporation, Allstates Oil and Producing Co., Inc., Energy Development Corp., Edco Drilling and Production, and The Clinton Oil Company) shall receive $50,000. These awards shall be payable from the first $15 million deposited in escrow on March 21, 1991.

f. Named plaintiffs, Class Members and defendant shall now consummate and be bound by the Settlement.

g. Except for claims arising under the Settlement on behalf of Class Members or Columbia, and at such time as this Order of the Court approving the Settlement as final is non-appealable, named plaintiffs and all Class Members and their heirs, executors, assigns and any one who may claim through them, shall be deemed to release and forever discharge the defendant, its predecessors and successors-in-interest, and each past or present parent, subsidiary, related or otherwise affiliated entity, partner, principal, director, officer, employee, agent, representative or assign, from any and all claims of the type asserted in this litigation relating to defendant's exercise of the cost recovery clause contained in the Class Members' gas purchase contracts at any time during the period commencing on or about July 10, 1985 and ending on or about July 10, 1991.

h. Jurisdiction is hereby retained as to matters related to the interpretation, administration and consummation of the Settlement as approved in this Order.

i. There is no reason for delay in the entry of judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and the Clerk of the District Court is directed to enter this judgment. Certification under Rule 54(b) will not result in any unnecessary appellate review nor will review of the adjudicated claims moot any further developments in this case. Even if subsequent appeals are filed, the nature of these claims are such that the appellate court would not have to decide the same issues more than once.

j. The court costs concerning this litigation shall be paid from the common fund.

IT IS SO ORDERED.