Deborah **BROTHERTON,**
et al., **Plaintiffs,**

v.

**Frank P. CLEVELAND, M.D.,**
et al., **Defendants.**

**No. C–1–89–105, C–1–90–111.**

United States District Court,
S.D. Ohio,
Western Division.

Feb. 21, 2001.

John Henry Metz, Cincinnati, OH, for plaintiffs.

John Joseph Arnold, Hamilton County Prosecuting Attorney, David Todd Stevenson, Hamilton County Prosecutor, Civil Unit, Philip Lewis Zorn, Jr., Assistant Prosecuting Attorney, Carl Joseph Stich, Jr., Chief Assistant Prosecuting Attorney, Christopher R. Carville, Rendigs, Fry, Kiely & Dennis, Stephen Allison Bailey, Martin, Bailey & MacDonald, Harry John Finke, IV, Graydon, Head & Ritchey, Gordon McGregor Strauss, Hamilton County Prosecutor, Civil Unit, Marlene Penny Manes, Cincinnati, OH, for defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on the Parties' Joint Motion to Approve Class Action Settlement, (doc. 366). Also before the Court is one filed Objection to the proposed settlement (doc. 368).

## I. BACKGROUND

### A. History of the Litigation

The facts of this case are set forth in *Brotherton v. Cleveland*, 173 F.3d 552, 555–57 (6th Cir.1999). Pending for more than ten years, this action has been addressed by the District Court for the Southern District of Ohio and the United States Court of Appeals for the Sixth Circuit numerous times. The following is a recitation of the facts from the United States Court of Appeals for the Sixth Circuit:

This case arose from allegations of the theft of body parts from the dead. This [action] concerns consolidated cases that have been ongoing since 1989. Given this tangled posture, we begin by relating some facts and procedural history. In 1983, Ohio passed a law to permit county coroners to harvest corneas for medical use. Ohio Revised Code § 2108.60 took effect in 1984. It reads:

(A) As used in this section:

. . .

(2) "Eye bank" means a nonprofit corporation that is organized under the laws of this state, the purposes of which include obtaining, storing, and distributing corneas to be used for corneal transplants or other medical or medical research purposes, and that is exempt from federal taxation. . . .

(3) "Eye bank official" means a person authorized by the trustees of an eye bank to make requests for corneas to be used for corneal transplants or other medical or medical research purposes.

(4) "Eye technician" means a person authorized by the medical director of an eye bank to remove the corneas of a decedent.

. . . .

(B) A county coroner who performs an autopsy pursuant to section 313.13 of the Revised Code may remove one or both corneas of the decedent, or a coroner may authorize a deputy coroner, physician or surgeon licensed pursuant to section 4731.14 of the Revised Code, embalmer authorized under section 2108.071 of the Revised Code to enucleate eyes, or eye technician to remove one or both corneas of a decedent whose body is the subject of an autopsy performed pursuant to section 313.13 of the

Revised Code, if all of the following apply:

(2) An eye bank official has requested the removal of corneas and certified to the coroner in writing that the corneas will be used only for corneal transplants or other medical or medical research purposes;

. . .

(4) The coroner, at the time he removes or authorizes the removal of the corneas, has no knowledge of an objection to the removal by [the decedent, his spouse, his next of kin, his legal guardian, or someone authorized to dispose of his body].

. . .

(C) Any person who acts in good faith under this section and without knowledge of an objection, as described in division (B)(4) of this section, to the removal of corneas is not liable in any civil or criminal action based on the removal.

Ohio Rev.Code Ann. § 2108.60 (Banks–Baldwin 1998) (hereinafter, "the removal statute").

Ohio counties elect individuals to serve four-year terms as county coroners. See Ohio Rev.Code Ann. § 313.01 (Banks–Baldwin 1998). The events precipitating this [action] occurred in Hamilton County (Cincinnati), Ohio and involved its county coroner at the time, Dr. Frank Cleveland.

The removal statute permits the harvesting of corneas only if an eye bank official requests their removal and certifies that an eye bank will use the corneas for medical or medical research purposes. See Ohio Rev.Code Ann. § 2108.60(B)(2) (Banks–Baldwin 1998). The Eye Bank Association of America ("EBAA") is a non-profit corporation with member eye banks in forty states. EBAA has a member in Cincinnati, the

Cincinnati Eye Bank for Sight Restoration, Inc. ("CEB").

On April 25, 1985, CEB sent a letter to Dr. Cleveland, petitioning the coroner to allow CEB "to remove the corneas of any coroner's case which falls within the guidelines of [O.R.C. § 2108.60]." Dr. Cleveland responded by directing his subordinates to "cooperate with the Cincinnati Eye Bank to obtain as many corneas as possible." The removal statute, at § 2108.60(4), permits removals only when the coroner "has no knowledge of an objection to the removal by [the decedent or certain others]."

Dr. Cleveland established a policy of "intentional ignorance," encouraging subordinates not to seek information on objections to corneal removal. This court has described that approach as a policy "not to review medical records or paperwork pertaining to a corpse prior to the removal of corneas." *Brotherton v. Cleveland*, 923 F.2d 477, 482 (6th Cir. 1991) ("*Brotherton I*"). When the coroner's office learned of a death, it would contact CEB, which would send a technician to remove the corneas.

Eventually, Dr. Cleveland learned that CEB personnel started inquiring about the existence of objections to removal. In response, he approved a memorandum to his subordinates which read, in part, "If eye bank personnel request 'next of kin' information on any of our cases, IT IS NOT TO BE GIVEN TO THEM. If they persist in that inquiry, obtain their names and make Jack or Carol aware of the incident." While the joint appendix does not reveal Jack and Carol's identities or job titles, we presume that they were not necessarily safeguarding the best interests of inquisitive eye bank personnel or next of kin.

On February 15, 1988, EMS personnel took Steven Brotherton ("Steven") to the Emergency Room of Bethesda Hospital (North) in Hamilton County. After the hospital staff pronounced Steven dead, they asked his wife, Deborah Brotherton ("Brotherton"), if she would permit an anatomical gift. She refused, citing Steven's beliefs, and the hospital documented this refusal in its record on the "Report of Death." To determine whether Steven committed suicide, the hospital released his body to the county coroner, Dr. Cleveland, whose staff performed an autopsy on February 16. The coroner's office contacted CEB, informed CEB that it could harvest Steven's corneas, and permitted CEB to send a technician to remove the corneas. Brotherton learned about this only when she reviewed the autopsy report, which remarked that Steven's "corneae are absent."

On February 9, 1989, Brotherton filed a complaint in the United States District Court for the Southern District of Ohio. Acting individually and as the administratrix of Steven's estate, and on behalf of her minor children, Brotherton sued, among others, Dr. Cleveland (in his personal and official capacity), EBAA, CEB, Bethesda North, and Bethesda, Inc., the parent corporation of Bethesda North.[1] Attacking the policy and practices of the coroner, hospital, and eye banks, and challenging the constitutionality of the cornea removal statute, Brotherton sought injunctions and damages under 42 U.S.C. § 1983 for due process and equal protection violations. She also asserted pendent Ohio common-law tort claims.

--------

1. Brotherton also sought to certify a class of "all beneficiaries and next of kin of decedents who have had their decedent's cornea removed by defendants without permission and/or in reckless disregard of whether there was an objection or refusal by

said beneficiaries or next of kin to allow such procedure...."

On August 11, 1989, the district court dismissed the case. The judge held that Brotherton had no property interest in Steven's body, rejected her equal protection claim, and dismissed the state claims without prejudice. See *Brotherton I*, 923 F.2d at 479. Brotherton filed a timely appeal. In 1991, this court decided *Brotherton I*, in which we reversed the district court, reaching only the due process issue. We explained that Brotherton had a property interest in Steven's body, that Ohio failed to provide necessary predeprivation procedures, and that "the policy and custom of the Hamilton County coroner's office is an established state procedure necessitating predeprivation procedures." Id. at 481–82.

On February 14, 1990, before this court decided *Brotherton I*, Brotherton filed a second complaint in the Southern District of Ohio. That complaint resembled the first, although it included an additional plaintiff whose decedent perished at Bethesda North and suffered the removal of corneas without the permission of the next of kin. As in the first complaint, Brotherton sought injunctions and damages under 42 U.S.C. § 1983 for due process and equal protection violations; she also asserted unspecified state common-law tort claims.[2]

2. Sometime before December 1991, Brotherton brought a state negligence action against the same defendants. The trial court granted summary judgment for the defendants, and an appeals court affirmed, finding that Bethesda had no duty to inform the coroner of Brotherton's wishes regarding the corneas. See *Brotherton v. Cleveland*, 76 Ohio App.3d 601, 602 N.E.2d 749, 750–51 (1991), motion to dismiss denied, 63 Ohio St.3d 1430, 588 N.E.2d 130 (1992) (table), jurisdictional motion overruled by, 64 Ohio St.3d 1416, 593 N.E.2d 6 (1992) (table), reh'g denied, 64 Ohio St.3d 1444, 596 N.E.2d 474 (1992) (table).

On July 6, 1990 (before this court announced its decision in *Brotherton I*), the district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6), again holding that Brotherton failed to adduce a constitutional violation. Brotherton appealed.

On June 30, 1992, this court issued *Brotherton v. Cleveland*, 968 F.2d 1214, No. 91-3316, 1992 WL 151286 (6th Cir. 1992) (per curiam) (unpublished) ("*Brotherton II*"). The decision in *Brotherton II* resolved several issues. It explained that: (1) Dr. Cleveland enjoyed qualified immunity in his personal capacity, see id. at *3; (2) Dr. Cleveland could not claim qualified immunity in his official capacity, see id. at **4–5; (3) for the purposes of the suit, Bethesda, Inc. did not constitute a state actor, see id. at *5; and (4) the Eye Banks were state actors. See id. at *6.

After this court remanded the second complaint in light of *Brotherton II*, Judge Spiegel consolidated the two cases in August 1992, designating the first complaint as the lead case. In November 1992, he certified the plaintiff class. The district court dismissed Bethesda North and granted summary judgment for Bethesda, Inc. ("Bethesda"). In August 1993, this court sua sponte dismissed Brotherton's appeal from the summary judgment for Bethesda. The district court vacated the previous grant of summary judgment, and turned its attention to class members requesting exclusion.

In early 1994, Judge Spiegel again granted summary judgment for Bethesda, designating the order as a final judgment pursuant to Rule 54(b). The order granting summary judgment disposed of the constitutional claims by relying on

*Brotherton II,* which held that Bethesda was not a state actor. It disposed of the state law claims by invoking a state decision holding that Bethesda had no duty to Brotherton. *See* note 2 *supra.* Brotherton appealed the final judgment; that appeal became No. 94–3465 . . .

On November 27, 1995, the district court granted Dr. Cleveland's motion for summary judgment and denied CEB and EBAA's motions for summary judgment. In its order, the court held that the Eleventh Amendment prevented Brotherton from suing Dr. Cleveland in his official capacity. The court explained that the county coroner enjoyed immunity because he acted pursuant to an Ohio statute that "induced" the policies he established. The court refused to extend Eleventh Amendment immunity to the eye banks, albeit relying on qualified immunity decisions to reach its conclusion. The court held that, as private parties, the eye banks could not invoke the Eleventh Amendment to foreclose Brotherton's suit.

After the court denied a motion for reconsideration, and certified its order as a final judgment under Fed.R.Civ.P. 54(b), Brotherton appealed, and EBAA filed a cross-appeal. This court assigned case number 96–3034 to Brotherton's appeal, and 96–3085 to EBAA's cross-appeal. Anticipating a settlement, this court remanded the three appeals (Brotherton's appeals regarding Bethesda and Dr. Cleveland, and EBAA's cross-appeal regarding the denial of its motion for summary judgment) pursuant to our decision in *First National Bank of Salem, Ohio v. Hirsch,* 535 F.2d 343 (6th Cir.1976).

In April 1997, Judge Spiegel recommended returning the matters to the Sixth Circuit and, in January 1998, he repeated this recommendation. On February 3, 1998, this court granted a motion to reinstate the appeal. The case retains Dr. Cleveland's name, although he has retired and been replaced by Dr. Carl Parrott. See David Holthaus, New Coroner's Calling: Finding Truth in Death, CINCINNATI POST, Feb. 23, 1995, at 1A. "[A]ny misnomer not affecting the substantial rights of the parties [to actions against a public officer in his official capacity] shall be disregarded." Fed.R.Civ.P. 25(d)(1). Accordingly, we disregard the misnomer, and we look to the merits.

*Brotherton,* 173 F.3d at 552–558. The Sixth Circuit Court of Appeals proceeded to hold that this Court erred in dismissing Brotherton's claims against Dr. Cleveland in his official capacity as Hamilton County Coroner, but affirmed this Court in all respects. *Id.* at 568.

Defendants filed another Motion for Summary Judgment on June 30, 1999 (doc. 236). Plaintiffs filed a Cross–Motion for Summary Judgment on July 1, 1999 (doc. 238). The Court held a hearing on this matter on December 7, 1999. (doc. 289). This Court issued an Order on March 24, 2000, denying the Motions for Summary Judgment by Cincinnati Eye Bank (hereinafter, "CEB") and Eye Bank Association of America (hereinafter, "EBAA") and granting in part Plaintiffs Motion for Summary Judgment on the issue of liability (doc. 289). Furthermore, this Court granted summary judgment as to liability on the part of Defendant Hamilton County, but concluded that there were genuine issues of material fact as to whether CEB and EBAA were acting in good faith and were entitled to qualified immunity (*Id.*). CEB and EBAA each filed an appeal of this order with the United States Court of Appeals for the Sixth Circuit (docs. 297 & 298). On May 1, 2000, this Court granted a stay of proceedings as to CEB and

EBAA until final disposition of the pending appeal.

**B. The Summary Jury Trial**

Meanwhile, on May 17, 2000, this Court began conducting a summary jury trial on the issue of damages (doc. 328). While the summary jury trial is merely advisory, the Court notes that it is a helpful settlement device when used to assist the parties in assessing the results of a trial on the merits. In this Court's experience, the results have been very instructive in helping the parties negotiate settlements, especially class actions. This summary jury trial concluded on May 18, 2001 (doc. 330). Among the findings by the jury was that members of the named class had suffered approximately $30,000 in damages and that all other members of the class suffered approximately $5000 in damages.

**C. The Settlement**

After the conclusion of the summary jury trial and adequate time for the Parties to evaluate the decision, the Court assisted the Parties in their arms length settlement negotiations at conferences held on June 13, 2000, and July 5, 2000 (doc. 336). Subsequently, the Parties informed the Court that they had reached a settlement.

On July 6, 2000, the Court appointed Ms. Marlene Penny Manes as a Special Master (doc. 353). The Parties then filed a Joint Motion for Approval of Class Settlement on November 16, 2000 (doc. 366). This Court tentatively approved the settlement on November 20, 2000, and ordered the Parties to proceed with the notice of settlement as required by Rule 23 (doc. 367). Notice regarding the class action and proposed settlement as well as the date and time of the Fairness Hearing was provided through personal service to 338 of the 601 potential class members. Fur-thermore, service by publication in the Cincinnati Enquirer was provided for three consecutive weeks of Sundays and Wednesdays. Plaintiffs were given an opportunity to opt-out of the class before January 15, 2001. Fifty nine individuals opted out of the settlement leaving the class at 542 individuals. Furthermore, Plaintiff Jimmie R. Miller filed an Objection to the settlement on January 1, 2001 (doc. 368).

**D. The Proposed Settlement Agreement**

The Proposed Settlement Agreement is summarized as follows:

1. Defendant shall pay Five Million Two Hundred and Fifty–Thousand Dollars ($5,250,000) into a Settlement Fund;

2. Defendants, Hamilton County, Ohio (including the Hamilton County Coroner's Office) and The Cincinnati Eye Bank for Sight Restoration, Inc., agree and will sign a Consent Decree that they will cease and desist in harvesting corneas of autopsy subjects without consent of the next of kin or others with appropriate authority to consent;

3. Defendant, Eye Bank Association of America, Inc., consents to and will abide by and will not act contrary to the terms of the Consent Decree.

4. The Settlement Fund will be distributed by a court-appointed Special Master;

5. The Special Master will determine fair and reasonable compensation to be paid to claimants based upon a number of factors, including, but not limited to: the degree of relationship to the next of kin pursuant to Ohio law to consent or object to an anatomical gift; consent by the de-

cedent or next of kin to anatomical gifts; the nature and degree of relationship to the decedent; any emotional distress caused by learning of the taking of the corneas; any medical, psychological or other bills incurred as a result of learning of the taking of the corneas; any religious objections or violations; and any other particular facts relevant to each claimant. The amount as to each category of loss will be determined by the number of claims and the amount of money within the Settlement Fund available for distribution to claimants. Any objection to the Special Master awards can be appealed to the United States Magistrate Judge, whose decision will be final;

6. Class members who have not previously been notified of the Class Action will be permitted to opt out no later than January 15, 2001 in writing in accordance with the procedures provided for in the attached Notice of Hearing;

7. If this agreement receives final approval by the Court, the parties will mutually dismiss all pending appeals involving this litigation and the related proceeding in the Hamilton County, Ohio Court of Common Pleas;

8. Plaintiffs' Class Counsel will move the Court to award reasonable attorney fees, to reimburse Plaintiffs' Class Counsel for litigation expenses and for incentive awards to appropriate class members. Any attorney fees or expenses for the Plaintiffs' Class Counsel will be paid out of the Settlement Fund, and will be subject to Court approval prior to determination of amounts payable to the claimants;

9. The Court will compensate the Special Master for time and expenses incurred in administering the claims process from the Settlement Fund. The Settlement Fund will pay the expenses of "Notice" to class members;

10. Notice of the Proposed Settlement will be sent by Plaintiffs' Class Counsel to all known claimants by regular mail; and in those cases where next of kin have not yet been found, Notice will be sent by certified mail, return receipt requested, to the last known address of next of kin which can be reasonably determined with diligent efforts. Notice of the Proposed Settlement will also be published in a newspaper of general circulation in the Cincinnati, Ohio area and in such other localities as is necessary for three (3) consecutive weeks;

11. If the Court does not approve the Proposed Settlement, as to all potential claimants, or if more than ten (10) potential members of the class "opt out", then Hamilton County, Ohio and the Hamilton County Coroner, Cincinnati Eye Bank for Sight Restoration, and Eye Bank Association of America, Inc. reserve the right to immediately withdraw their consent to the proposed settlement and immediately withdraw all funds previously tendered to the Special Master.

Finally, a fairness hearing was held before this Court on February 1, 2001 regarding the Parties Joint Motion for Approval of Class Action Settlement as well as Plaintiffs' Attorney's Petition for Fees. The Court heard from Class Counsel and Defendants. As of the February 1, 2001 hearing, there were 542 members of the class. A number of the members were

present at the hearing and received an opportunity to be heard on the record. Several class members spoke in favor of the proposed settlement. Two complained about the settlement. One class member did not think that the settlement was for enough money. The other had just been informed of the existence of the litigation and objected to the behavior of the Defendants in this case. There was only one Objection on the record and this sole objector did not attend the hearing. The Court has been adequately briefed on the fairness of this settlement and is prepared to rule on the Parties Joint Motion for Approval of Class Action Settlement at this time.

## II. DISCUSSION

### A. The Class Action Settlement

Rule 23(a) of the Federal Rules of Civil Procedure provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2)there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Having previously considered the factors of numerosity, commonality, typicality and adequacy under Rule 23(a) and concluded that the Class could be certified against the defendants, (doc. 48), we need not review the issue of the factors under Rule 23(a) being satisfied in this case. Our task is to determine whether settlement of this class action pursuant to Rule 23 is appropriate at this time. The first issue before the Court is to decide whether the Settlement is fair, reasonable, and adequate.

### 1. Legal standard

According to Rule 23 of the Federal Rules of Civil Procedure, court approval is required to settle a class action. Fed. R.Civ.P. 23(e).

> A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs.

*Id.* The law generally favors the settlement of complex class actions. *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D.Ohio 1991); *see also* 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions,* § 11.41 (3d ed.1992).

There are three steps which must be taken by the court in order to approve a settlement: (1)the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement. *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983); *Enterprise Energy Corp.,* 137 F.R.D. at 245; *In re Dun & Bradstreet Credit Services Customer Litigation,* 130 F.R.D. 366, 369 (S.D.Ohio 1990).

Although Rule 23(e) is silent as to the standard courts should apply to approve or disapprove a proposed settlement, *Parker v. Anderson,* 667 F.2d 1204, 1208 (5th Cir.1982), the standard developed by the courts is to determine whether the proposed settlement is fair, adequate, and reasonable under the circumstances, and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued. *Bailey v. Great Lakes Canning, Inc.,* 908 F.2d 38, 42 (6th Cir.1990); *In re*

*Rio Hair Naturalizer Prod. Litig.*, No. MDL 1055, 1996 WL 780512, at *11 (E.D.Mich. Dec. 20, 1996) (citing Manual for Complex Litigation, § 30.42 (3d ed.1995)). The court cannot modify the proposed settlement, but must approve or disapprove the proposed settlement "as a whole" in relations to all of those concerned. *See Evans v. Jeff D.*, 475 U.S. 717, 727, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986); *Walsh v. Great Atlantic & Pacific Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983); *In re Rio Hair Naturalizer Prod. Litig.*, *supra*, at *11 ("The touchstone for final approval is the effect on the class as a whole in light of the particular circumstances....").

■ The district court bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement. *In re Dun*, 130 F.R.D. at 369. The court should also determine that the settlement is neither illegal nor collusive. *Vukovich*, 720 F.2d at 921; *In re Dun*, 130 F.R.D. at 369. With such preliminary approval, the settlement is presumptively reasonable, and an individual who objects has a heavy burden of proving the settlement is unreasonable. *Vukovich*, 720 F.2d at 921 (citing *Stotts v. Memphis Fire Dep't*, 679 F.2d 541, 551, (6th Cir. 1982), *rev. on other grounds*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984)); *Enterprise Energy Corp.*, 137 F.R.D. at 246.

Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement. *In re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 211 (S.D.Ohio 1997); *see also In re Rio Hair Naturalizer Prod. Litig.*, *supra*, at *11; *Parker*, 667 F.2d at 1209; *Manual for Complex Litigation*, § 30.42 (3d ed.1995). Consequently, those objecting to the proposed settlement have a heavy burden of proving the unreasonableness of the settlement. *In re Southern Ohio Correctional Facility*, 173 F.R.D. at 211.

■ Notice of the proposed settlement should be given to all those affected by it. *Vukovich*, 720 F.2d at 921; *In re Dun*, 130 F.R.D. at 370. All parties should be given the opportunity to consider the settlement and respond to it. *Id.*

■ The district court may give its final approval of a class action settlement if it determines that the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir.1990); *see also Vukovich*, 720 F.2d at 921; *Enterprise Energy Corp.*, 137 F.R.D. at 245; *In re Dun*, 130 F.R.D. at 369. This is determined by examining the settlement "in its entirety and not as isolated components." *Enterprise Energy Corp.*, 137 F.R.D. at 245. The court is not "to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." *Vukovich*, 720 F.2d at 921.

■ When determining whether the proposed settlement is fair adequate, and reasonable, the court takes into account several factors:

(1) the plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

(2) the complexity, expense and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the judgment of experienced trial counsel;

(5) the nature of the negotiations;

(6) the objections raised by the class members; and,

(7) the public interest.

*In re Dun,* 130 F.R.D. at 371 (citing *Vukovich,* 720 F.2d at 922); *Enterprise Energy Corp.,* 137 F.R.D. at 245; *Thompson v. Midwest Foundation Independent Physicians Association,* 124 F.R.D. 154, 157 (S.D.Ohio 1988).

With these rules in mind, the Court now turns to an examination of the proposed settlement. The Court has previously made a preliminary approval of the settlement. In addition, the Court notes that the notice sent to the class regarding settlement of this matter was reasonable. Therefore, the Court will now proceed with an analysis of the factors involved in a determination of whether this proposed settlement is proper.

### 1. *The plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement*

 The summary jury trial served as a strong indication of plaintiffs' ultimate success if this case were to proceed to trial. The summary jury was instructed that liability existed for the Defendant Hamilton County. After hearing evidence regarding damages, the summary jury recommended damages of $30,000 for all of the named class members and $5000 for those who had not responded to a prepared questionaire.

There are also dangers and uncertainty, however, inherent in any litigation. It is quite possible that the Plaintiffs would not have ultimately recovered an amount equal to the settlement amount. Furthermore, proceeding would have necessitated an individual determination of damages as to each individual Plaintiff. This would have been a long and tedious process. Certainly some Plaintiffs would have received more or less than the amount in the proposed settlement. In addition, Defendants

have offered something that Plaintiffs may not have obtained by a judgment of this Court. The Defendants have agreed to a consent decree stating that the County will never again engage in the harvesting of corneas without prior consent of the next of kin.

Therefore, when balanced against one another, the Court concludes that Plaintiff's likelihood of success on the merits is outweighed by the relief that Defendants have made available in this settlement agreement. In light of the unique circumstances of this case, the Court believes that this factor demonstrates that the settlement is fair, adequate, and reasonable.

### 2. *The complexity, expense and likely duration of the litigation*

 This case has endured four trips to United States Court of Appeals for the Sixth Circuit. In addition, both Parties agree that at least one further appeal is probable before resolution of this matter is to be had. Furthermore, although the Parties have been working diligently to resolve this matter, this litigation has lasted over 11 years. To delay this matter further, would not substantially benefit the class members. Therefore, the Court concludes that this factor weighs in favor of the proposed settlement.

### 3. *Stage of the proceedings and the amount of discovery completed*

 At this point, discovery has been completed and the case has been presented in a summary jury trial. The summary jury trial is quite similar to a real trial in regards to the preparation required of the attorneys. This process advised the Parties of the strengths and weaknesses of their respective positions. This indicates that the Parties reached a settlement after full evaluation of the strength of their cases. The Court believes that this factor

weighs in favor of a determination that this settlement is fair, adequate and reasonable.

### 4. *The judgment of experienced trial counsel*

The Plaintiffs' Class is represented by Mr. John Metz. Mr. Metz has over 23 years experience as a trial attorney. The Court finds that this attorney is extremely qualified and experienced in medical class action litigation. The Court further finds that Class Counsel's recommendation to approve the settlement is well informed. Accordingly, the Court recognizes the recommendation of Class Counsel and holds that this factor leans in favor of approval of the proposed settlement.

### 5. *The nature of the negotiations*

The Court notes that this settlement was reached as the result of significant and substantial arms-length negotiations. This settlement has been eleven years in the making. The negotiations did not reflect or suggest any collusion or illegality. The Court has been involved in a number of settlement discussions with the Parties. In addition, the Court presided over the summary jury trial. Therefore, the Court determines that the nature of the settlement negotiations, as observed by the Court, lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable.

### 6. *Objections raised by the class members*

The fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement. *Enterprise Energy Corp.*, 137 F.R.D. at 246 (citing *Thompson*, 124 F.R.D. at 159). In considering the extent and significance of the objections, "the Court must view the agreement in its entirety, rather than isolating individual components of the agreement for analysis." *Bronson v. Bd. of Educ. of City School Dist. of City of Cincinnati*, 604 F.Supp. 68, 78 (S.D.Ohio 1984) (quoting *Liddell v. Bd. of Educ. of City of St. Louis*, 567 F.Supp. 1037 (E.D.Mo.1983)). Also, a relatively small number of class members who object is an indication of a settlement's fairness. *Newberg on Class Actions, supra*, at § 11.48.

In this case, there was only one filed Objection (doc. 368). The Court believes it is fair to state that the Objection deals more with the dismissal of Dr. Cleveland in his personal capacity than any deficiency in the settlement agreement. In addition, the Court notes that when given an opportunity to object at the fairness hearing, more members of the class spoke in favor of finality than complained about the terms of the settlement. Indeed, only one person objected to the amount of the settlement. Therefore, the Court finds that the sole objection actually filed in this case does not present compelling reasons why this settlement should not be approved.

### 6. *The Public Interest*

Finally, the Court finds that the public interest is served by this settlement. As discussed above, the consent decree provides protection to the public that possibly would not be obtained through a judgment of this Court. In addition, this settlement puts an end to a long and protracted litigation. Therefore, this Court concludes that this settlement is in the public interest.

### III. CONCLUSION

The Court has carefully reviewed all aspects of the Proposed Settlement Agreement as well as the above noted objections. Viewing the Proposed Settlement Agree-

ment in its entirety, the Court finds that the Proposed Settlement is fair, reasonable and adequate. Accordingly, for the reasons stated above the Court hereby GRANTS the Joint Motion to Approve the Class Action Settlement (doc. 366). Class Counsel's Application for Attorneys' Fees (doc. 372) and Plaintiffs' Motion for Incentive Award for Deborah Brotherton will be decided by a separate Order of this Court.

SO ORDERED.