In re THREE STAR TELECAST, INC.,
Three Star Corporation, Debtors.

VIACOM LATINO AMERICANA, INC.,
Plaintiff–Appellee,

v.

THREE STAR CORPORATION, Three
Star Telecast, Inc.,
Defendants–Appellants.

Civ. No. 87–0693CC.

United States District Court,
D. Puerto Rico.

Nov. 9, 1988.

William H. Beckerleg, Woods & Woods, Hato Rey, P.R., for Three Star Telecast, Inc. and Three Star Corp.

Ronald L. Rosenbaum, Woods, Rosenbaum, Luckeroth & Pérez–González, Hato Rey, P.R., for Viacom Latino Americana, Inc.

## OPINION AND ORDER

CEREZO, District Judge.

This action is before us on appeal from the Bankruptcy Court. At issue is that court's interpretation of a stipulation/settlement agreement in the case of *Viacom International, Inc. v. Three Star Telecast, Inc., et al.*, Civil No. 86–0136(JAF). The facts of the case are as follows:

Viacom Latino Americana, Inc. (Viacom) is the exclusive licensee for the program "60 Minutes" in Puerto Rico. Viacom, in turn, entered into a Program License Agreement on November 20, 1984, with debtor/appellant Three Star Corporation, granting the latter the right to show "60 Minutes" as well as other programs, which were to be transmitted in San Juan, Puerto Rico, by Channel 18, an entity operated by debtor/appellant Three Star Telecast, Inc.[1]

On January 31, 1986 Viacom filed a suit in this Court against Three Star and another defendant, Antilles Broadcasting Corporation (Antilles),[2] for collection of money, the above-mentioned Civil No. 86–

---

1. Both corporations will hereinafter be referred to jointly in the singular as Three Star.

2. Antilles broadcasts via Channel 8 in the Virgin Islands. Its debt to Viacom was $48,000.00.

0136(JAF). Pursuant to an interim agreement, Three Star was allowed to continue transmission of "60 Minutes" while the suit was pending. The suit concluded with a stipulation which was approved by the Court and incorporated into its judgment. The settlement agreement acknowledged Three Star's outstanding debt of $282,-730.00 and contained the plan whereby Three Star would continue to show "60 Minutes," paying a monthly fee for the right, while at the same time reducing its debt. We quote from relevant portions of the stipulation:

> 5. /Three Star/ will pay to /Viacom/ the sum of $7,500.00 on the date of execution hereof, the sum of $2,000.00 on October 15, 1986, and the sum of $16,-000.00 per month beginning November 1, 1986, and on the same day of each and every consecutive month thereafter for ten months. Beginning in the eleventh consecutive month payment will be $18,-000 per month until the balance of $282,-730.00 is paid in full.
>
> Of the aforesaid monthly payments, $1,500 per week will be credited to the current cost of "60 Minutes" up to June 30, 1987. Thereafter $1,725.00 per week will be credited to the current cost of "60 Minutes."

In addition to continuing to provide "60 Minutes," Viacom agreed to make available on June 1, 1987, other programming, on the condition that Three Star was current in its payment plan.[3]

Three Star made the payment of $7,500 due on execution of the stipulation as well as the one due on October 15, 1986. On October 31, 1986, however, Three Star filed its Chapter 11 bankruptcy petition. Thereafter, it tendered payments of $6,000 a month to Viacom, which it believed covered the portion to be applied to "60 Minutes"

current payments. Viacom apparently erroneously deposited the first check, and then returned the next two. It then filed this adversary proceeding in the Bankruptcy Court, seeking to enjoin Three Star from showing "60 Minutes."

The Bankruptcy Court, in its opinion dated February 17, 1987, found that the entire stipulation constituted an executory contract, which the debtor could accept or reject. The debtor, in turn, appealed the order based on this interpretation to us.

In the first instance, appellants argue that the Court below failed to hold a hearing on the issue of whether the stipulation was an executory contract. We find the argument to be meritless. The stipulation is a complete document, unambiguous on its face and therefore requires no extrinsic evidence for its interpretation. The definition of what constitutes an executory contract within the framework of a bankruptcy proceeding is well established, as will be discussed below. The relevant facts necessary to know what performance has been completed are already in the record. The issue of whether the duties remaining to be performed fit the definition is, then, a matter of law.

We now turn to the concept of an executory contract within context of a bankruptcy proceeding. The Bankruptcy Court found that an executory contract is one "under which the obligations of both the debtor and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." V. Countryman, "Executory Contracts in Bankruptcy," Part I, 57 Minn.L.Rev. 439, 460 (1973). This definition, as expressed by Countryman, has been generally accepted in the

---

**3.** The specific terms in pertinent part of Viacom's obligation are found in paragraph 9 of the Stipulation:

... Viacom will make available to /Three Star/:
a) Viacom will send one more feature film. Three Star receive/ d / 13 instead of 14 billed, subject to verification.
b) Viacom will send the following miniseries billed but never delivered.

1) "Playing for Time"—3 hours
2) "Question of Honor"—3 hours
c) Viacom will send "All in the Family II"—39 original episodes never delivered.
d) Viacom will deliver 22 episodes of "Life and Times of Gizzly Adams"—never delivered.
e) Viacom will deliver 15 episodes of "Oh Madeline"—not received nor credited.

field of bankruptcy law. *See e.g.: Counties Contracting and Construction Company v. Constitutional Life Ins. Co.,* 855 F.2d 1054 (3rd Cir.1988); *In re Fred Herbert,* 806 F.2d 889 (9th Cir.1986); *In re Donald W. Speck, Sr., et al,* 798 F.2d 279 (8th Cir.1986); *Draper v. Draper,* 790 F.2d 52 (8th Cir.1986); *In re Pacific Express, Inc.,* 780 F.2d 1482 (9th Cir.1986); *Lubrizol Enterprises v. Richmond Metal Finishers,* 756 F.2d 1043 (4th Cir.1985); *In re Select-a-Seat Corporation,* 625 F.2d 290 (9th Cir. 1980); *In re Lawrence N. Jolly,* 574 F.2d 349 (6th Cir.1978); *In re Chipwich, Inc.,* 54 B.R. 427 (Bkruptcy.S.D.N.Y.1985).

We must now determine if there were obligations on the part of each party, the non-performance of which, would relieve the other from his performance. Three Star's remaining obligations according to the terms of the stipulation were to pay $16,000.00 monthly beginning November 1, 1986 for ten consecutive months, and thereafter $18,000.00 per month until the balance of $282,730.00 was paid in full. Additionally, pursuant to paragraph 7, Three Star, as guarantor for payment and performance of Antilles' debt during the eleven months of its payment plan, would, in the event of a default, be obligated to pay Antilles' remaining debt.

As to Viacom's obligation, it consists primarily of granting a month to month entitlement to show "60 Minutes."[4] Additionally, Viacom will provide the various programs listed on page 311, on the condition that Three Star has complied with its payment timetable and has repaid half its debt.

■ The contingency of an obligation does not prevent its being executory under 11 U.S.C. Section 365. *Lubrizol Enterprises v. Richmond Metal Finishers,* 756 F.2d 1043, 1046 (4th Cir.1985). Until the time has expired during which an event triggering a contingent duty may occur,

the contingent obligation represents a continuing duty to stand ready to perform if the contingency occurs. *Id.*

■ In light of the above, we find that there remain obligations to perform by both parties, and therefore, the contract is an executory one.

■ Three Star raises the issue of whether it must pay the full $16,000.00 a month, or only the $6,000.00 a month, in view of the bankruptcy filing. A debtor in possession may not assume part of an executory contract and reject the rest; assumption is an all or nothing proposition. D. Bordewieck "The Postpetition, Pre–Rejection, Pre–Assumption Status of an Executory Contract" 59 American Bankruptcy Law Journal 197, 221 (1985), citing *N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984). Nevertheless, if the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of these services. *Bildisco, supra,* 104 S.Ct. at 1199. What the reasonable value is for the "60 Minutes" program is a matter for the Bankruptcy Court to decide.

For the above-stated reasons, the decision of the Bankruptcy Court is AFFIRMED.

SO ORDERED.

---

**4.** Unlike the previous license agreements whereby the license was granted for a fixed period of time, paragraph 6 of the stipulation contains a conditional licensing on a month-to-month basis:

In regard to Sixty Minutes, however, Three Star Telecast, Inc. and Three Star Corporation will not be entitled to receive the program should any payment not be made on their behalf on its due date. If any default is cured within the applicable grace period then the "60 Minutes" Program will be reinstated.