**In re The COLUMBIA GAS SYSTEM, INC. and Columbia Gas Transmission Corporation, Debtors.**

**ENTERPRISE ENERGY CORPORATION, et al., Appellants,**

v.

**UNITED STATES of America, on Behalf of its INTERNAL REVENUE SERVICE, Appellee.**

**Civ. A. No. 92–258 LON. Bankruptcy Nos. 91–803, 91–804.**

United States District Court, D. Delaware.

Oct. 6, 1992.

F.L. Peter Stone and Jeffrey B. Bove of Connolly, Bove, Lodge & Hutz, Wilmington, Del. (Duke W. Thomas (argued), Robert J. Sidman (argued) and James H. Hedden of Vorys, Sater, Seymour and Pease, Columbus, Ohio, of counsel), for appellants.

Ellen Slights of U.S. Atty.'s Office, Wilmington, Del. (Stuart D. Gibson (argued), U.S. Dept. of Justice, Washington, D.C., of counsel), for appellee.

## OPINION

LONGOBARDI, Chief Judge.

Before the Court is the appeal of Enterprise Energy Corporation ("Energy" or "Enterprise Energy") from a Bankruptcy Court order, dated March 18, 1992, which denied Enterprise Energy's motion to require Columbia Gas Transmission Corporation ("TCO") to assume or reject an executory settlement agreement.

## BACKGROUND

On July 31, 1991 (the "petition Date"), Columbia Gas System, Inc. ("CG") and its subsidiary, TCO (together, the "Debtors") filed petitions for Chapter 11 reorganization in the United States Bankruptcy Court for the District of Delaware. No trustee or examiner has been appointed in these bankruptcy cases and TCO and CG have remained debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108, continuing in the management of their respective businesses and possession of their respective properties. Docket Item ("D.I.") 8 at 2.

The Debtors and their affiliates comprise one of the largest natural gas systems in the United States, consisting of CG (which is the parent public utility holding company), a service company and nineteen subsidiaries, including TCO. These companies are primarily engaged in the exploration and production, purchase, storage, transmission and distribution of natural gas at wholesale and retail and related resource development. Several subsidiaries are gas utility companies that service businesses and homes. TCO serves part of the thirteen Northeastern, Middle Atlantic, Midwest and Southern states and the District of Columbia, transporting and selling natural gas at wholesale to affiliates and unaffiliated distribution companies. TCO is the system's principal purchaser of natural gas from producers in the Southwest, Midcontinent and Appalachia and operates exten-

sive underground storage facilities. D.I. 8 at 2–3.

In July, 1985, Enterprise Energy and two other companies filed a class action complaint against TCO in the United States District Court for the Southern District of Ohio (the "Ohio District Court"). By order dated February 21, 1986, the Ohio District Court· certified a class (the "Class Members") consisting of " '[a]ll owners, operators and producers of natural gas producing wells in the Appalachian region (New York, Pennsylvania, West Virginia, Kentucky, Maryland, Virginia and Ohio) who are parties to gas purchase contracts with [TCO] entitling them to receive the maximum lawful price or a deregulated price under the NGPA ... and against whom [TCO] has invoked a price reduction for amounts due under the contracts....' " D.I. 5 at 6 (quoting Order of February 21, 1986, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D.Ohio)). The class includes about 2163 members and involves approximately 852 gas purchase contracts. *Id.*

The Class Members had asserted that TCO had breached gas purchase contracts (the "Class Member Contracts") between them and TCO. The Class Member Contracts set the price for each unit of natural gas delivered to TCO at the maximum price permitted under the Natural Gas Policy Act of 1978 (the "NGPA") during the month of delivery. The complaint alleged that TCO was substantially underpaying class members for gas delivered and yet to be delivered. *Id.* at 5–6; D.I. 8 at 3.

The litigation progressed over the next five years with extensive discovery and motion practice. The Ohio District Court set a trial date for September, 1990. The parties, however, engaged in settlement negotiations and the court continued the trial. In February, 1991, TCO entered into a Stipulation of Proposed Class Action Settlement ("Settlement Agreement") which was conditional and subject to approval by the Ohio District Court pursuant to Federal Rule of Civil Procedure 23(e). On March 15, 1991, the Ohio District Court preliminarily approved the proposed settlement agreement. After holding a fairness hearing on May 23, 1991, the Ohio District Court on June 18, 1991, issued an Opinion and Order ("Order") approving the Settlement Agreement. D.I. 5 at 7; D.I. 8 at 4–6. The District Judge explained that "[i]n determining the fairness, adequacy and reasonableness of the proposed Settlement, this Court need not reach ultimate conclusions of fact regarding the merits of the case or decide the underlying issues of law." Opinion and Order, Findings of Fact and Conclusions of Law, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 at 245 (S.D.Ohio 1991) ("Ohio Order"). The Court further noted that only the parties have the power to change the terms of the proposed agreement, not the court. *Id.* The Ohio District Court ordered the Clerk to enter judgment in the action pursuant to Federal Rule of Civil Procedure 54(b). *Id.* at 252. No party took an appeal from the June 18, 1991 order; thus, it became final and unappealable on July 18, 1991. The Ohio District Court retained jurisdiction, however, over matters related to the interpretation, implementation and consummation of the settlement.[1] D.I. 8 at 6.

---

**1.** With regard to these latter items, the Order approving the settlement provided:

   f. Named plaintiffs, Class Members and defendant shall now consummate and be bound by the Settlement.

   g. Except for claims arising under the Settlement on behalf of Class Members or Columbia, and at such time as this Order of the Court approving the Settlement as final is non-appealable, named plaintiffs and all Class Members and their heirs, executors, assigns and any one who may claim through them, shall be deemed to release and forever discharge the defendant, its predecessors and successors-in-interest, and each past or present parent, subsidiary, related or otherwise affiliated entity, partner, principal, director, officer, employee, agent, representative or assign, from any and all claims of the type asserted in this litigation relating to defendant's exercise of the cost recovery clause contained in the Class Members' gas purchase contracts at any time during the period commencing on or about July 10, 1985 and ending on or about July 10, 1991.

   h. Jurisdiction is hereby retained as to matter related to the interpretation, adminis-

The Settlement Agreement required TCO to deposit 30 million dollars into an interest bearing escrow account with class counsel acting as escrow agent. The proceeds of the escrow account were to be used "in settlement of, and as a full and complete discharge and release of TCO, for all of their claims arising on or before January 1991." D.I. 8 at 4. TCO was to pay the first 15 million dollars on or before March 21, 1991; TCO made the payment in a timely fashion. D.I. 5 at 8; D.I. 8 at 4, 6. The second 15 million dollars was to be paid on March 23, 1992. This payment has not been made as a result of the proceedings in the Bankruptcy Court, discussed *infra*. D.I. 5 at 8; D.I. 8 at 4–5.

Under the Settlement Agreement, the Class Members were not entitled to receive any of the funds deposited in the Escrow Account until they executed a release of claims and a contract supplement. D.I. 8 at 5. The supplement to the Class Member Contracts was to amend and clarify pricing and other terms concerning future gas deliveries to TCO. D.I. 5 at 8; *see also* D.I. 8 at 5. Beginning in January, 1991, the difference between the price TCO had been paying and the modified contract price was placed in a "production escrow" account. These funds were to be released to the producers upon approval of the settlement agreement by the Ohio District Court and execution of the necessary releases and contract supplements. D.I. 8 at 5.

## PROCEEDINGS IN THE BANKRUPTCY COURT

On July 31, 1991, TCO filed a voluntary Chapter 11 petition in bankruptcy. On February 20, 1992, the Class Members filed a motion to compel TCO to assume or reject the settlement agreement pursuant to 11 U.S.C. § 365 of the Bankruptcy Code. Simultaneously, TCO and the Class Members filed a proposed agreed order assuming the settlement agreement. D.I. 5 at 10; D.I. 8 at 6–7.

Notice of the motion and proposed order was provided to all appropriate parties involved in the bankruptcy. The United States of America on behalf of the Internal Revenue Service ("IRS") filed the only objection to the motion and proposed order. D.I. 5 at 10. TCO agreed with Enterprise Energy that the class action settlement agreement is an executory contract and indicated it wanted to assume its obligations under the settlement. D.I. 8 at 7–11. On March 18, 1992, after holding a hearing on the motion, the Bankruptcy Court denied the motion. The Bankruptcy Court Judge handwrote on the proposed agreed order "Motion denied, March 18, 1992, for the reasons stated in open court." D.I. 5 at 10; *see also* D.I. 1, Designation 2.

The Bankruptcy Court's conclusions, as stated in open Court, follow in full:

The facts with respect to this motion, Enterprise Energy class members to require assumption or rejection of an executory contract, are not in dispute. A class action suit against TCO in the Federal District Court of Ohio was resolved through a settlement approved by a District judge on June 18, 1991, which was before the bankruptcy filing on July 31, 1991.

It is Energy's position that an executory contract exists between the class members and TCO. The Circuit Court of Appeals in this Circuit adopted the Countryman definition of an executory contract. That is an executory contract is a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.

The central issue is whether the remaining obligations of the class members are material. I find that Energy has not met its burden on this issue. The remaining obligations of the class members relate to the execution of releases, supplemental contracts and affidavits. The United States District Court has retained jurisdiction to supervise the implementa-

tration and consummation of the Settlement as approved in this Order.

Ohio Order at 252.

tion of the approved settlement. If any of the class members fail to honor these execution obligations, there is a procedure in place to deal with the problem, that procedure being due process.

There has been no showing that upon the failure of any class member to perform any of these execution obligations that the United States District Court would set aside its order, thereby reviving the underlying action.

Moreover, there is authority to the effect that the phrase "executory contract" should not normally be applied to a judicial order. I refer you to *Roxse Homes, Inc. v. Roxse Homes Limited Partnership*, 83 B.R. 185, District of Massachusetts, 1988, which cited the case of *In Re: Jolly*, 574 F.2d 349, 351, Sixth Circuit, certiorari denied 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322, 1978 and other cases.

The United States of America's argument relating to res judicata in this context is without merit.[2]

Transcript of March 18, 1992 hearing at 87–89.

## BASIS OF APPELLATE JURISDICTION

■ Section 158(a) of title 28 of the United States Code provides that:

> The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. . . .

28 U.S.C. § 158(a).

Enterprise Energy maintains, and the IRS does not dispute, that the March, 1992 order of the Bankruptcy Court is a final order. The Court, however, must make its own assessment to determine whether appellate jurisdiction exists.

In bankruptcy cases, the courts accord "finality" a somewhat flexible, pragmatic definition. *In re Taylor*, 913 F.2d 102, 104 (3rd Cir.1990). The Third Circuit has explained that a number of factors are relevant in determining the finality of a bankruptcy order: "the impact on the assets of the bankruptcy estate, the necessity for further factfinding on remand, the preclusive effect of [an appellate] decision on the merits on further litigation, and whether the interests of judicial economy would be furthered." *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94,

---

**2.** With respect to its *res judicata* argument, the IRS asserted that a decision by the Bankruptcy Court in December, 1991, was decisive on the issues presented by Enterprise Energy's motion. Transcript of March 18, 1992 hearing at 59–60. At the December hearing, according to the IRS, the Bankruptcy Court denied TCO's motion for an Order permitting it to pay the second installment due in March, 1992. D.I. 6 at 2. At the March, 1992 hearing, the IRS maintained that "[e]very matter that is being presented today could have been presented by TCO and by the class plaintiffs or, incidentally, in privity with TCO because they seek to enforce the same contract, although on different sides." Transcript at 59–60.

In its brief on this appeal, the IRS quotes from the December, 1991 hearing. As the Appellants have noted, however, the IRS has neither cross-appealed nor cross-designated the *res judicata* issue as an issue on appeal. Nor has the IRS cross-designated the portions of the December, 1991 transcript from which it has quoted. Thus, they are not in the record and will not be considered by the Court. *See In re Pine Mountain, Ltd.*, 80 B.R. 171, 173 (Bankr.

9th Cir.1987) (issue not included in appellant's statement of issues is waived). *See also* Bankruptcy Rule 8006 (regarding designation of items to be included on the record and issues on appeal); *Snap–On Tools, Inc. v. Freeman*, 956 F.2d 252, 255 (11th Cir.1992) (issue not listed pursuant to Bankruptcy Rule 8006 and not inferable from issues listed is deemed waived); *Energrey Enterprises, Inc. v. Oak Creek Energy Systems, Inc.*, 119 B.R. 739, 741 (E.D.Cal.1990) (issue that is not designated by appellant and not inferable from issues that are listed is waived), *aff'd without op.*, 956 F.2d 1167 (Bankr. 9th Cir.1992); *In re Brenner*, 1991 WL 214051, n. 1 (E.D.Pa.1991) (issues not included by appellant pursuant to Bankruptcy Rule 8006 are waived on appeal); *Ichinose v. Homer National Bank*, 946 F.2d 1169, 1174 (5th Cir.1991) (appellee has burden of ensuring that record on appeal includes all items relevant and necessary to its position); *In re Abijoe Realty Corp.*, 943 F.2d 121, 123 n. 1 (1st Cir.1991) (responsibility for voids in appellate record resides "with party whose claim of error depends for its support upon any portion of the record of the proceedings below which was omitted from the designation of the record on appeal").

97 (3rd Cir.1988) (quoting *In re Meyertech,* 831 F.2d 410, 414 (3rd Cir.1987)).

The order holding that the settlement agreement reached in the class action suit is not an executory contract and therefore not assumable conclusively resolved a discrete set of issues. Moreover, regardless of this Court's resolution, no further fact-finding appears to be necessary. *Cf. In re Taylor,* 913 F.2d at 104 (order approving rejection of contracts fully and finally resolved discrete set of issues and is final order); *In re Delaware & Hudson Ry.,* 129 B.R. 388, 393 (D.Del.1991) (holding that order determining that contracts are executory and may be assumed and assigned is final). The Court determines it has appellate jurisdiction of this appeal.

### ISSUES PRESENTED

The Appellants, pursuant to Bankruptcy Rule 8006, listed four issues to be presented on this appeal:

1. Whether the Bankruptcy Court erred when it held as a matter of law that the Settlement Contract was not an executory contract under the undisputed facts of this case, because the Settlement Contract was approved by the Ohio District Court pursuant to Federal Rule of Civil Procedure 23(e).

2. Whether the Bankruptcy Court erred when it held that Appellants had not met their burden of proving that the remaining obligations of the Appellants were material.

3. Whether the Bankruptcy Court erred when it held that proof that the Ohio District Court would set aside its Judgment was necessary to demonstrate the materiality of the remaining performance obligations of the Appellants.

4. After finding that there were no disputed facts, whether the Bankruptcy Court erred when it failed to hold that the parties to an executory Settlement Contract could agree to the materiality of the remaining obligations under that executory Settlement Contract and decide, in the exercise of their collective business judgment, to perform those remaining obligations and avoid the adverse consequences of a breach of the executory Settlement Contract.

Designation of Items to be Included in Record on Appeal and Statement of Issues to be Presented.

### STANDARD OF REVIEW

Findings of fact by the Bankruptcy Court may be set aside only if the findings are "clearly erroneous." *See* Bankr.Rule 8013. The Bankruptcy Court's legal conclusions, however, are subject to plenary review. *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.,* 891 F.2d 66, 69 (3rd Cir.1989); *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3rd Cir.1988).

### ANALYSIS

Section 365(d)(2) of the Bankruptcy Code provides that "[i]n a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract ... at any time before the confirmation of a plan but the court, on request of any party to such contract ..., may order the trustee to determine within a specified period of time whether to assume or reject such contract...." 28 U.S.C. § 365(d)(2). The primary issue presented on this appeal is whether the Bankruptcy Court erred in holding that the settlement agreement in the underlying class action suit in the Ohio District Court, which was approved by court order, is not an executory contract subject to assumption or rejection by the Debtor.

The Bankruptcy Code does not itself define "executory contract." The Court of Appeals for the Third Circuit, however, has adopted the definition formulated by Professor Vern Countryman in a 1973 law review article: "[An executory contract is] a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.,* 872 F.2d 36, 39 (3rd Cir. 1989) (quoting Countryman, *Executory*

*Contracts in Bankruptcy, Part 1,* 57 Minn.L.Rev. 439, 460 (1973)).

■ At the outset, the Court must determine whether the Order approving the class action settlement prevents the settlement agreement from being an executory contract. The Bankruptcy Court Judge cited two cases in support of her finding that "there is authority to the effect that the phrase 'executory contract' should not normally be applied to a judicial order": *Roxse Homes, Inc. v. Roxse Homes Ltd. Partnership,* 83 B.R. 185 (D.Mass.), *aff'd without op.,* 860 F.2d 1072 (1st Cir.1988) and *In re Jolly,* 574 F.2d 349 (6th Cir.1978).

In *In re Jolly,* the debtor ("Jolly") had purchased the right to burial spaces in the Chattanooga Memorial Park and made a downpayment on the spaces. Jolly financed the balance of the payment by executing a negotiable instrument, promising to pay the balance in 48 equal installments. Jolly did not perform the contract and paid only two installments over two years. Memorial Park, pursuant to a clause in the contract allowing them to accelerate in the event of default, exercised its option to accelerate and filed suit on the note seeking the balance plus attorney's fees. Since the debtor failed to appear, default judgment was entered against him. Jolly made some payments toward satisfaction of the judgment but filed for bankruptcy prior to completion. The Bankruptcy Court allowed the trustee to "reject the contract." 574 F.2d at 350. The Sixth Circuit, however, determined that the trustee wanted to "ignore the fact that there has already been a breach and judgment as to damages on that breach, and start all over with a new breach and new determination of damages." 574 F.2d at 352. The Court of Appeals held that the executory contract provisions of the Bankruptcy Act had no applicability to the situation before it, that is, the contract had already been breached by a debtor and reduced to final judgment. *Id.*

In *Roxse Homes,* the debtor ("appellant") entered into a purchase and sale agreement with the appellee. The appellant then refused to consummate the sale and the appellee sued in state court for specific performance. The state court granted judgment for the appellee. 83 B.R. at 186–87. Subsequently, the appellant filed a Chapter 11 petition in bankruptcy. The appellee moved for relief from the automatic stay imposed pursuant to 11 U.S.C. § 362(a) so that it could enforce the state court judgment and compel appellant to transfer the property. The appellant sought to treat its agreement with appellee as executory and reject it. *Id.* at 187. The court held that the purchase and sale agreement was not executory "because it has been reduced to judgment. The 'contract' between the parties, as such, no longer exists. Instead, all the rights and duties of appellant and appellee now derive from the pre-petition state court judgments, which cannot be 'rejected' under § 365. The court's judgment replaced the consensual obligations of contract with a new set of duties imposed by judicial command." *Id.*

The matter before this Court is distinguishable from the issues before the courts in *In re Jolly* and *Roxse Homes.* Both cases involved decisions on the merits that the debtors attempted to avoid by "rejecting" the judgments in the subsequent bankruptcy proceedings. The underlying dispute in both actions involved a breach of contract which the courts resolved in one party's favor. The case before the Ohio District Court also involved a breach of contract. The Ohio District Court, however, did not resolve the underlying dispute on its merits; it merely resolved the dispute by approving a settlement agreement reached by the parties. Neither *In re Jolly* nor *Roxse Homes* involved settlement agreements entered into by the parties to the litigation to resolve an underlying dispute. Thus, whether the term "executory contract" should or should not apply to judicial orders, *In re Jolly* and *Roxse Homes* do not persuade the Court that the judicially approved class action settlement in this case is not a contract.

This case is more similar to *In re Three Star Telecast, Inc.,* 93 B.R. 310 (D.P.R. 1988). In that case, a licensee of a television program had entered into a license

agreement with Three Star (the Debtor). The licensee sued Three Star for collection of money. The parties entered into a stipulation "which was approved by the Court and incorporated into its judgment." Thereafter, the debtor (appellant) filed a petition in bankruptcy. The District Court affirmed the Bankruptcy Court's determination that the judicially approved stipulation constituted an executory contract that the debtor could either accept or reject. *Id.* at 310–12.

The IRS argues that *In re Three Star* is not good law given the affirmation of *Roxse Homes.* The Court disagrees. The issue in *In re Three Star* was whether a *stipulation reached to resolve an underlying action* approved by a court and incorporated into a judgment was an executory contract. In *Roxse Homes,* on the other hand, the debtor *attempted to reject a judgment which had supplanted the underlying dispute.*

The appellant argues that because the settlement agreement was incorporated into a judicial order in which the Ohio District Court retained jurisdiction, the settlement agreement in this case is a "consent decree." There is authority for this proposition. *See Halderman v. Pennhurst State School and Hosp.,* 901 F.2d 311, 318 (3rd Cir.1990) (treats judicially approved settlement agreement in class action as a consent decree; Third Circuit found that the District Court had retained jurisdiction to enforce the obligations under the settlement agreement); *Washington Hosp. v. White,* 889 F.2d 1294, 1299 & n. 9 (3rd Cir.1989) (stipulation of dismissal that was "so ordered" by court is functional equivalent and has same effect as a consent decree); *Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir.1983) ("A consent decree is essentially a settlement agreement subject to continued judicial policing").

■ Consent decrees are to be treated as contracts for some purposes but not for others.[3] *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236 n. 10, 95 S.Ct. 926, 935 n. 10, 43 L.Ed.2d 148 (1975) (citations omitted). For enforcement purposes, a consent decree is to be construed "basically as a contract." *Id.* at 238, 95 S.Ct. at 935. *See also Halderman,* 901 F.2d at 318 (in resolving dispute over alleged breach of settlement agreement in class action, court will treat settlement agreement as a contract) (citations omitted). For bankruptcy purposes, this Court believes it is appropriate to treat the judicially approved settlement agreement in this case as a contract. *Cf. In re Three Star,* 93 B.R. 310. Whether this contract is an "executory" contract must then be determined by reference to the Countryman definition.

■ The Appellants, of course, argued here, as they did in the Bankruptcy Court, that the obligations incurred under the settlement agreement were so far unperformed as of the petition date that the settlement agreement satisfied the Countryman definition. D.I. 5 at 13. For example, the Appellants assert that, as of the petition date, TCO had paid into the escrow account only the first 15 million dollars of the 30 million dollar settlement. With respect to the provision that "payments to individual Class Members out of the escrowed amounts will be contingent upon receipt by Columbia of a duly executed release of all such Claims and a duly executed contract supplement reflecting the terms hereof concerning the future rights and obligations under" the Class member contracts, (*see* Stipulation of Proposed Class Action Settlement attached to Affidavit of James P. Holland), only a small portion of this documentation had been executed by the Class Members as of the petition date and tendered to TCO for processing.

---

**3.** The Appellants assert that the settlement constitutes an accord and that if the accord is breached, the original class action can be fully revived. D.I. 5 at 20. The Court is not convinced of the accuracy of this assertion, since the order approving the settlement agreement suggests that there could only be an action for breach of contract. *See supra* footnote 1 for relevant portion of order approving settlement. In any event, the Court concludes that this assertion is irrelevant to the inquiry of whether the class action settlement agreement was a contract.

As of the petition date, "only 41 of the Supplements relating to the 852 Class Member Contracts had been executed by TCO to implement the contract amendments contemplated in the Settlement Contract." D.I. 5 at 14. The IRS does not dispute these assertions.

The Court concludes, for different reasons than the Bankruptcy Court Judge, that the contract/judicially approved settlement agreement in the Ohio Class Action suit is not executory. The obligations of both TCO and Enterprise Energy must be "so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *See Sharon Steel,* 872 F.2d at 39 (quoting Countryman). The Court is not convinced that either party's obligations are "so far unperformed." *Cf. In re Three Star,* 93 B.R. 310. TCO has paid 15 million dollars into the escrow account in addition to the monies paid into the production escrow account. These monies constitute at least half of what TCO was to pay under the settlement agreement.

█ The parties seem to agree that if this case involved a simple exchange of money for execution of a release of all claims, there would be no question that the contract would *not* be executory. The Appellants maintain, however, that the contract supplements would change this result. The Court agrees that the contract supplements add a complication but disagrees that under the facts presented in this action that the "required" execution of the supplements makes the contract executory. The Appellants assert that the contract supplements were material for the class members to fix future relations. Yet there appears to be no dispute that the Appellants and TCO are functioning as though the contract supplements are in place. Indeed, since TCO operates the only pipeline to which the Appellants have access, TCO is the only purchaser of their fuel. The supplemental contracts are, therefore, not merely an option but are necessary.

Furthermore, the terms and conditions of the contract supplements are substantially provided in the settlement agreement. It is clear, therefore, that executing the contract supplements will be little more than a perfunctory act utilizing preapproved terms and conditions. Obviously these ministerial acts are analogous to the execution of the release to be found in the settlement of any case.