In re CONTINENTAL AIRLINES,
INC., et al.

Michael J. VAUGHAN, et al.

v.

CONTINENTAL AIRLINES HOLDINGS,
INC., and Continental Airlines, Inc.

Bankruptcy Nos. 90–932 to 90–984.
Adv. No. 92–142.

United States Bankruptcy Court,
D. Delaware.

March 31, 1993.

See also 154 B.R. 176.

Brian Sullivan, Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, DE, Dannie B. Fogleman, Coleman, Coxson, Penello, Fogleman & Cowen, P.C., William B. Cowen, Washington, DC, for plaintiff.

William H. Sudell, Jr., Luke W. Mette, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for debtor/defendant.

HELEN S. BALICK, Bankruptcy Judge.

This is the court's decision on the Motion to Dismiss filed by Continental Airlines Holdings, Inc. and Continental Airlines, Inc. (Continental or Debtors) in an adversary proceeding filed by Michael J. Vaughan, Donald C. Davidson, Francis M. Barber, Jr. and Robert W. Conser (Plaintiffs). Plaintiffs, for themselves and on behalf of others similarly situated, seek class certification, a mandatory injunction requiring Continental to employ the members of the class and payment of lost wages and benefits.

Debtors have filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code and have continued the operation and management of their business and assets pursuant to sections 1107 and 1108 of the Bankruptcy Code.

Debtors' Motion to Dismiss this adversary proceeding is based on lack of subject matter jurisdiction and is filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and Rule 7012(b)(1) of the Federal Rules of Bankruptcy Procedure.

*Facts*

Plaintiffs' complaint makes the following allegations. On or about March 3, 1989, the International Association of Machinists (IAM) engaged in a strike against Eastern Airlines, Inc. (Eastern), a wholly-owned subsidiary of Texas Air Corporation (Texas Air), now known as Continental Airlines Holdings, Inc. The Airline Pilots Association (ALPA) ordered its members to honor the IAM picket line and threatened Plaintiffs with various forms of retribution if they did not. Plaintiffs, and certain other pilots (members of the class which Plaintiffs seek to represent), refused to honor the picket line and continued to work for Eastern during the period of the strike. Plaintiffs allege that ALPA made it clear that if Plaintiffs continued to work, and Eastern did not survive the strike, ALPA would see to it that Plaintiffs were unable to obtain other employment in the airline industry. On the other hand, Plaintiffs

claim that ALPA assured them that they would not suffer any retribution if they ceased working for Eastern and honored the IAM picket line.

Because of the strike, when Eastern filed its bankruptcy petition on March 8, 1989, it had approximately 200 working pilots out of a workforce which exceeded 3,000. At that time, Eastern was actively negotiating the sale of certain assets in an effort to effect a successful reorganization. Plaintiffs contend that, because certain pilots continued to work for Eastern, the Shuttle between Washington, New York and Boston and Eastern's South American Routes were sold for higher prices than would have been possible had those routes not been in operation.

Plaintiffs also contend that because of ALPA's threats Plaintiffs became concerned about future employment in the airline industry in the event that Eastern failed to emerge from bankruptcy. In response to these concerns, Plaintiffs claim that the Debtors promised Plaintiffs that if Plaintiffs continued to work for Eastern and Eastern was sold or failed to emerge from bankruptcy, they would be provided jobs with Continental with their seniority intact. According to Plaintiffs, these representations were made by Frank Lorenzo, then Chairman of Texas Air Corporation and agent of both Texas Air and Continental, Phil Bakes, then President of Eastern and a member of Texas Air's Board, and other agents of Defendants. Plaintiffs further assert that, in reliance on these representations, Plaintiffs crossed the IAM picket line and continued to work for Eastern and thus, fully performed their end of the bargain.

On January 1, 1991 Eastern ceased operations and terminated the majority of its pilot work force. Shortly thereafter, Plaintiffs and other members of the class they seek to represent requested that Continental provide them employment with Continental with their seniority intact.[1] Despite

---

1. Plaintiffs' complaint alleges that the class which Plaintiffs seek to represent consists of in excess of 130 former pilots of Eastern who performed services for Eastern between March 3, 1989 and March 31, 1989.

numerous requests, the Debtors have refused to do so.

Plaintiffs further allege that, beginning in February of 1991, ALPA followed through on its threats by naming Plaintiffs in a blacklist which was distributed throughout the airline industry. According to Plaintiffs, by using pressure tactics against ALPA-represented carriers and other carriers over whom ALPA has influence, ALPA has effectively eliminated the Plaintiffs' ability to obtain employment at other major air carriers in the United States. Continental, therefore, is the only major carrier at which Plaintiffs can obtain employment if they are to continue their professional careers.

Thus, claim Plaintiffs, having relied on the Debtors' representations and having fully performed their end of the bargain, Plaintiffs find themselves either unemployed or employed in jobs at a fraction of their prior salaries and unable to find employment in the airline industry.

*Discussion*

Defendants' Motion to Dismiss is governed by Federal Rule of Civil Procedure 12(b)(1), made applicable to this adversary proceeding by Bankruptcy Rule 7012(b)(1). Their Motion to Dismiss will be granted if, considering the factual allegations contained in the complaint as true, the complaint fails to provide this Court with subject matter jurisdiction. *Mortensen v. First Federal Sav. and Loan Ass'n,* 549 F.2d 884 (3d Cir.1977).

Plaintiffs allege that Plaintiffs and Debtors entered into an agreement, that Plaintiffs fully performed their end of the agreement, and that Debtors have failed to render their performance. Continental contends that the alleged contract is pre-petition and executory; therefore, it subject to rejection. It is Continental's position that since Plaintiffs failed to file a motion to compel assumption or rejection of the alleged contract as required by Bankruptcy Rules, their complaint is premature and should be dismissed. Thus, the issue presented is whether, as a matter of law, Plaintiffs' complaint alleges a pre-petition executory contract between Debtors and Plaintiffs and therefore, must be dismissed for lack of subject matter jurisdiction.

Section 365(d)(2) of the Bankruptcy Code provides the following:

> [i]n a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract … at any time before the confirmation of a plan but the court, on request of any party to such contract …, may order the trustee to determine within a specified period of time whether to assume or reject such contract. …

28 U.S.C. § 365(d)(2).

Although the term "executory contract" is not defined in the Code, the Third Circuit, along with most jurisdictions, has adopted the following definition by Professor Vern Countryman.

> [An executory contract is] a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.

*Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.,* 872 F.2d 36, 39 (3d Cir.1989); *Enterprise Energy Corp. v. United States,* 146 B.R. 106, 111–12 (D.Del.1992).

■ The correct time to determine whether or not a contract is executory for purposes of § 365 is as of the date of filing of the bankruptcy petition. *In re Bastian Co.,* 45 B.R. 717, 720 (Bankr.W.D.N.Y. 1985). Relying on the Countryman definition, the issue becomes whether Plaintiffs' complaint alleges a contract under which the obligations of *both* Continental and Plaintiffs were so far unperformed as of December 3, 1990 that the failure of either to complete performance would constitute a material breach … (emphasis added). *Id.*

■ Continental maintains that the alleged agreement satisfies the Countryman definition of an "executory contract" because any agreement between the parties, if it exists at all, is simply an employment contract requiring future performance by both Plaintiffs and Debtors, i.e., an "execu-

tory contract". The facts, however, contradict this assertion. What Plaintiffs allege is that agents of Debtor entered into an agreement with Plaintiffs to *offer* future employment with Continental with seniority intact *if* Plaintiffs would cross the IAM picket lines and continue to serve as pilots for Eastern during the time of the strike. Simply stated, Plaintiffs allege that Plaintiffs and Debtors entered into a contract whereby Debtors promised to *offer* an employment contract to Plaintiffs in the *future* if Plaintiffs performed certain actions *now*. When Plaintiffs crossed the picket line and continued working for Eastern, they completed their performance. An "executory contract" does not exist where, as here, the non-debtor party has completed performance. *Sharon Steel Corp. v. National Fuel Gas Distrib.*, 872 F.2d 36 (3d Cir.1989); *Lubrizol Enterprises v. Richmond Metal Finisher*, 756 F.2d 1043, 1046 (4th Cir.1985).

Debtors maintain that Plaintiffs' own allegations support Debtors' claim that the contract, if one exists, is executory, i.e., Plaintiffs allege that agents of the Debtors promised that if Plaintiffs continued to work for Eastern and Eastern was sold or failed to emerge from bankruptcy, Plaintiffs would receive jobs at Continental with their seniority intact. The foregoing allegation, according to Continental, shows that Plaintiffs owed substantial performance to Debtors on December 3, 1990; it was necessary for Plaintiffs to both request employment from Continental and thereafter, render services to Continental. This argument, however, is without merit. As stated *supra*, the alleged agreement is not an employment contract; the necessity for Plaintiffs to request employment from Continental is not substantial performance which, if unperformed, would constitute a material breach. Requesting employment is merely an administrative task, necessary to secure performance by Continental. *Matter of GEC Industries, Inc.*, 107 B.R. 491 (B.R.D.Del.1989).

Although Continental attempts to distinguish the facts of *GEC* from the instant case, the alleged promise by Debtors is similar to the guaranty at issue in *GEC*.

Debtor GEC moved to reject, as "executory contracts", certain guaranties it had issued dealing with roofing products supplied prior to filing bankruptcy. In denying GEC's motion this Court stated "under those warranties, [the company] is contingently obligated for specific performance.... Even though warranty claimants must comply with certain conditions to claim under the warranties, this is not a situation where there are reciprocal obligations continuing into the future". *Id.* Just as the Plaintiff in *GEC* completed performance by paying the purchase price, Plaintiffs in the instant case completed their performance by crossing the picket line and continuing to work for Eastern during the 1989 IAM strike. The fact that it was necessary for Plaintiffs to comply with certain job application procedures subsequent to Continental's petition date does not, as Debtors suggest, obligate Plaintiffs to future performance and thus, render the agreement at issue executory in nature.

Additionally, Debtors contend that Plaintiffs' demand in their complaint for lost future wages is a judicial admission that the alleged contract is executory. This argument is also without merit. The demand by Plaintiffs for lost future wages goes to the issue of damages rather than whether the alleged contract is executory.

Finally, Debtors maintain that Plaintiffs' filing of proofs of claim are also an admission of the executory nature of the alleged contract. This filing merely preserves whatever rights Plaintiffs may have; it does not impact the determination of whether the contract at issue is executory.

For the foregoing reasons, Continental's Motion to Dismiss is DENIED.