In re TRANS WORLD AIRLINES, INC., Debtor. (Three Cases.)

Stanley BERGER and Beverly Berger, Appellants,

v.

TRANS WORLD AIRLINES, Appellee.

LONDON INTERNATIONAL TRAVEL LTD. and Latin American Travel, Inc., Appellants,

v.

TRANS WORLD AIRLINES, Appellee.

Stanley BERGER and Beverly Berger, Appellants,

v.

TRANS WORLD AIRLINES, Appellee.

Civ. A. Nos. 94–641–SLR to 94–643–SLR. Bankruptcy No. 92–115.

United States District Court, D. Delaware.

May 10, 1995.

Anne E. Bookout, Stephen M. Miller, Smith, Katzenstein & Furlow, Wilmington, DE (Charles Alan Seigel, Peter T. Sadowski and Jerald S. Enslein, The Stolar Partnership, St. Louis, MO, of counsel), for appellants.

William H. Sudell, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE, and Leonard Komen, Selner, Glaser, Komen, Berger & Galganski, St. Louis, MO, for appellee.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

### I. INTRODUCTION

This case comes before the court upon an appeal from certain orders of the Bankruptcy Court for the District of Delaware (the "bankruptcy court") issued on October 31, 1994. Specifically, the bankruptcy court denied the following three motions: (1) the Motion of Stanley and Beverly Berger (the "Bergers") for Recognition of Compulsory Counterclaim as an Informal Proof of Claim and Request for Payment of Administrative Expense, or, Alternatively, for Leave to File a Proof of Claim and Request for Payment of Administrative Expense Out of Time, and for Relief from the Discharge Injunction to Prosecute Claims to Judgment (the "motion to proceed"); (2) the Motion of the Bergers for an Order Barring the Claims of TWA ("Bergers' motion to bar"); and (3) the Motion of London International Travel, Ltd. ("London") and Latin American Travel, Inc. ("Latin") to Bar TWA's Claims ("London and Latin's motion to bar"). At all times relevant to this appeal, the Bergers were the sole owners of London and Latin. (D.I. 8, Attachment G at ¶ 11). The Bergers appeal from the bankruptcy court's denial of motions (1) and (2); London and Latin appeal from the bankruptcy court's denial of motion (3).

For the reasons that follow, the bankruptcy court's orders denying these motions will be affirmed.

## II. JURISDICTION

■ Appellant contends that this court has jurisdiction to hear this case pursuant to 28 U.S.C. § 158. (D.I. 7) Appellee does not dispute the existence of subject matter jurisdiction. "The Court, however, must make its own assessment to determine whether appellate jurisdiction exists." *In re Columbia Gas Sys.*, 146 B.R. 106 (D.Del.1992), *aff'd*, 50 F.3d 233 (3d Cir.1995).

■ Section 158(a) of Title 28 of the United States Code provides in pertinent part as follows:

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title....

28 U.S.C. § 158(a). "In bankruptcy cases, the courts accord 'finality' a somewhat flexible pragmatic definition." *In re Columbia Gas Sys.*, 146 B.R. at 110 (citing *In re Taylor*, 913 F.2d 102, 104 (3d Cir.1990)). Relevant factors a court must evaluate are the following:

[T]he impact upon the assets of the bankrupt estate, the necessity for further factfinding on remand, the preclusive effects of our decision on the merits on further litigation, and whether the interest of judicial economy would be furthered.

*In re Market Square Inn, Inc.*, 978 F.2d 116, 120 (3d Cir.1992) (quoting *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir.1987)). The most important of the above factors is the impact upon the assets of the bankrupt estate. *Id.*

In the case at bar, the court finds that the bankruptcy court's order denying the Bergers' motion to proceed had a significant impact on the bankrupt estate, and that its order denying that motion and appellants' motions to bar had a preclusive effect on further litigation. Accordingly, this court finds that the bankruptcy court's action constituted a final order for purposes of § 158

and that this court has jurisdiction over the appeal.

## III. BACKGROUND

On January 31, 1992, TWA filed in the bankruptcy court a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On April 3, 1992, the bankruptcy court set May 15, 1992 as the bar date for the presentation of claims against the bankrupt estate (the "claims bar date"). It is undisputed that the Bergers presented no claim prior to or on this date.

On April 7, 1993, TWA filed an action against the Bergers, London and Latin in the United States District Court for the Eastern District of Missouri (the "Eastern District") alleging fraud, money had and received, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). On April 22, 1993, the Bergers filed a compulsory counterclaim in this action against TWA, alleging defamation arising from statements allegedly made between October 22, 1990 and in or about December 1992. (D.I. 8, Attachment B).

On May 28, 1993, TWA filed in the bankruptcy court its Second Amended Plan of Reorganization (the "Plan"); a confirmation hearing was held on June 29, and the Plan was confirmed by court order (the "Order") on August 12, 1993. The Order and Plan discharged TWA "from all claims that arose before the confirmation date ... whether or not ... a proof of claim ... is filed or deemed filed."

On March 29, 1994, the Eastern District dismissed TWA's claim and the Berger's counterclaim. On March 31, 1994, the Bergers and TWA refiled their claims in the Circuit Court of St. Louis County, Missouri (the "state court").[1] On June 10, 1994, TWA moved the state court to dismiss the Bergers' action as discharged in bankruptcy. Subsequently, the Bergers filed in the bankruptcy court their motions to proceed and to bar, and London and Latin filed their motion to bar. On October 31, 1994, the bankruptcy court denied all three motions. This appeal followed.

---

1. In the state court action, TWA substituted for its RICO count a claim for breach of contract.

## IV. STANDARD OF REVIEW

The findings of fact of the bankruptcy court are reversible only if clearly erroneous. Bankruptcy Rule 8013; *In re Delaware & H.R. Co.,* 124 B.R. 169, 178 (D.Del.1991) (citing *In re Spada,* 903 F.2d 971, 975 (3d Cir.1990)). "Thus, a reviewing court will affirm the bankruptcy court's findings unless 'on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed.'" *In re Delaware & H.R. Co.,* 124 B.R. at 178 (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Conclusions of law are freely reviewable *de novo. In re Abbotts Dairies,* 788 F.2d 143, 1447 (3d Cir.1986). When findings of fact are based on an incorrect legal standard, those findings are subject to plenary review on appeal. *First American Bank v. Century Glove, Inc.,* 81 B.R. 274 (D.Del. 1988), *aff'd, in part, Century Glove, Inc. v. First American Bank,* 860 F.2d 94 (3d Cir. 1988).

## V. DISCUSSION

The Bergers raise four issues on appeal, while London and Latin raise one. The Bergers first contend that the bankruptcy court erred in denying the motion to proceed because, given TWA's failure to provide them adequate notice of, *inter alia,* the claims bar date and the confirmation hearing, the discharge of their claims violated their due process rights. Next, the Bergers contend that the bankruptcy court erred in refusing to recognize the compulsory counterclaim they filed in the dismissed Eastern District action as an informal proof of claim. The Bergers' third claim is that the bankruptcy court erred in failing to issue a requested order stating that the bankruptcy court's denial of the motion to proceed "does not affect their rights [in the state court proceeding] to setoff under 11 U.S.C. § 553." (*Id.* at 16). Finally, the Bergers contend that the bankruptcy court erred in denying their motion to bar, because TWA failed to disclose to the bankruptcy court its action against the Bergers, London and Latin. This last contention forms the basis of London's and Latin's

appeal of the bankruptcy court's denial of their motion to bar.

The court will consider these issues in the order presented.

### A. The Motion to Proceed
#### 1. Due Process

The Bergers contend that "'[d]ue process requires that Debtor's known creditors be given actual notice'" of bankruptcy proceedings, (D.I. 7 at 8, *quoting Insurance Co. of N. Am. v. Faden (In re Faden),* 170 B.R. 304, 309 (Bankr.S.D.Tex.1994)), and that the Bergers were "known creditors" of TWA "after they filed their Compulsory Counterclaim ... on April 22, 1993, and certainly prior to May 22, 1993," when TWA filed its reply to the counterclaim. (*Id.* at 7). Even if this were true, it does not follow that the Bergers ought therefore have been granted leave to proceed with their claim before the bankruptcy court. TWA filed its Chapter 11 petition in January 1992, 15 months after the Bergers' counterclaim allegedly first arose. On April 3, 1992, the claims bar date was fixed by the bankruptcy court at May 15, 1992. At no time prior to or during the pendency of TWA's bankruptcy proceedings through the claims bar date did the Bergers make known to TWA the fact of their claim. Indeed, by their own concession, the earliest their claim might have been known to TWA was April 1993, almost a year after the claims bar date had passed. The bankruptcy court accordingly found that the Bergers were unknown creditors as of the claims bar date. This court agrees.

Where the creditor is an unknown creditor, "its due process rights may not have been violated by a lack of notice." *In re Somar Concrete, Inc.,* 102 B.R. 44 (Bankr.D.Md.1989).

[W]here ... a debtor has no knowledge of a claim, it can hardly be expected to include it in its list of creditors or provide notice to an unknown creditor. In such instance, all that can be done is to file the petition with as thorough a schedule of debts as possible. When this is done, and there are no facts to indicate that the debtor has knowingly failed to list a credi-

tor, then the debtor has done all that should be done. If by happenstance there exists a person unknown to the debtor who has a claim, it is incumbent upon that person, once he becomes aware that bankruptcy proceedings have been initiated, to inquire further whether his claim might be affected. ...

*In re Siouxland Beef Processing Co.*, 55 B.R. 95 (Bankr.N.D.Iowa 1985). Moreover, the bankruptcy court found as a factual matter that the Bergers "had actual notice of the existence of th[e bankruptcy] case from its inception" in January 1992. (D.I. 8, Attachment A at 2) The court finds nothing in the record as presented by appellants to suggest that this finding was erroneous. As unknown creditors with actual knowledge of the bankruptcy, "it [was] incumbent upon" the Bergers "to inquire further whether [their] claim might be affected" by the bankruptcy proceedings. Having known of the bankruptcy proceedings for three-and-a-half months before the claims bar date—as long as any known creditor—and having not come forward with their claim for eleven months beyond that date, the Bergers can hardly complain that the fault for their failure to meet the claims bar date rests appropriately with TWA.

■ The Bergers further argue that, at a minimum, they were entitled to actual notice of the confirmation hearing, because they filed their counterclaim one month before notice of the confirmation hearing was published on June 10, 1993. (D.I. 7 at 7, D.I. 10 at 5). TWA contends that the Bergers were still "unknown creditors" as of this date because their claim was not then " 'reasonably ascertainable,' or was speculative or conjectural." (D.I. 10 at 10) (citations omitted). The bankruptcy court found that the Bergers were indeed at this time unknown creditors and held that constructive notice, therefore, was sufficient. (D.I. 8, Attachment A at 2).

This court will not reverse the bankruptcy court's finding that the Bergers were unknown creditors unless it is clearly erroneous. The bankruptcy court evidently drew a distinction between TWA as defendant in the Eastern District action and TWA as debtor in bankruptcy for purposes of assessing

knowledge of the Bergers' claim. Given TWA's size, the relatively short period of time between service of the Bergers' claim and publication of notice of the confirmation hearing, and the advanced stage of the bankruptcy proceeding, the drawing of such a distinction is not unreasonable.

■ In addition, the court is not persuaded that the Bergers were damaged by TWA's failure to provide them actual notice of the confirmation hearing. Bankruptcy Rule 3003(c)(2) requires each creditor whose claim is not scheduled to file a timely proof of claim and precludes voting by or distribution of any estate assets to those creditors who fail to do so. By failing without sufficient cause to meet the claims bar date, the Bergers were thus precluded from participating in any of the distributions under the Second Amended Plan, even had they been provided actual notice of the confirmation hearing. *See, In re Charter Co.*, 113 B.R. 725 (M.D.Fla.1990).

■ Lastly, the Bergers complain that TWA should have provided them notice of the bar date for the filing of claims for administrative expenses. The bankruptcy court found this claim meritless, and this court agrees. Bankruptcy Code Section 503(b) provides that administrative expenses include "the ... costs and expenses of preserving the estate;" certain taxes, fines, penalties or reductions in credit relating to these taxes; "compensation and reimbursement awarded under section 330(a)" of the Bankruptcy Code; expenses incurred by creditors (1) filing section 330(a) petitions, (2) receiving transferred or concealed property or (3) in connection with the prosecution of certain criminal offenses; expenses incurred by creditors, indenture trustees, equity security holders or certain committees in making substantial contributions; expenses incurred by certain custodians; compensation for professional services; compensation for certain services rendered by indenture trustees; and fees and mileage payable under chapter 119 of title 28. 11 U.S.C. § 503. While this list is not exhaustive, it is indicative of the type of claims properly characterized as "administrative." The Bergers' claim for defamation damages obviously is not properly so charac-

terized. The administrative claims bar date was thus irrelevant to the preservation of the Bergers' action.

For these reasons, the court will affirm the bankruptcy court's order of October 31, 1994 denying the motion to proceed, to the extent it is based on the bankruptcy court's finding that sufficient notice was provided appellants at all relevant stages of the bankruptcy proceeding.

### 2. Informal Proof of Claim

■■■■ The court further agrees with the bankruptcy court's holding that, "as to an informal proof of claim, any pleading must have been filed in the [b]ankruptcy [c]ourt to be effective, which was not done." *See Hatzel & Buehler, Inc. v. Station Plaza Asso., L.P.,* 150 B.R. 560, 561 (Bankr.D.Del.1993) ("To be recognized, an informal proof of claim 'must be in the form of a pleading filed in the bankruptcy court which shows that a demand is made against the estate and the creditor's intention to hold the estate liable.' *In re Wilbert Winks Farm, Inc.,* 114 B.R. 95 (Bankr.E.D.Pa.1990)."); *see also, In re Anderson–Walker Industries, Inc.,* 798 F.2d 1285, 1287 (9th Cir.1986) (emphasis added) ("For a document to constitute an informal proof of claim, it must state an explicit demand showing the nature and amount of the claim **against the estate,** and evidence an intent to hold the debtor liable."). The Bergers' counterclaim, filed in the federal district court in St. Louis, Missouri, hardly meets this requirement. Nor is the court satisfied that, even if a copy of the counterclaim had been filed in the bankruptcy court, the Bergers would be entitled to proceed. As noted, the counterclaim was filed in April 1993, more than one year after the bar date for filing proofs of claim, of which the Bergers had been provided sufficient notice. By failing to meet the claims bar date, the Bergers had waived any right they might otherwise have had to participate in the distribution of the estate.

The court, therefore, will affirm the order of the bankruptcy court denying the Bergers' motion to proceed to the extent that motion was based on the Bergers' allegation that the counterclaim constituted an informal proof of claim.

### 3. Set Off Order

■■■■ Lastly, the court finds that the bankruptcy court did not err in declining to issue an order guaranteeing the Bergers' right to set off the damages claimed in their counterclaim against those TWA seeks from them in the pending state court proceeding. The bankruptcy court's confirmation order provided that,

> [e]xcept as otherwise provided in this Confirmation Order, Confirmation shall: (a) discharge TWA from all Claims or other debts that arose before the Confirmation Date and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (i) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the bankruptcy Code or (iii) the holder of a Claim based on such debt has accepted the Plan....

> As of the Confirmation Date, ... all entities shall be precluded, to the extent permissible under applicable law, from asserting against TWA ... any other or further claims, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any nature that occurred prior to the Confirmation Date. In accordance with the foregoing, ... **this Confirmation Order constitutes a judicial determination of discharge of all such Claims and other debts and liabilities against TWA ..., pursuant to sections 524 and 1141 of the Bankruptcy Code,** and such discharge voids any judgment obtained against TWA at any time, to the extent that such judgment relates to a discharged claim.

(D.I. 11, Exhibit P at 55–56) (emphasis added).

Section 524(a) of the Bankruptcy Code provides that:

> A discharge in a case under this title ...

> (2) operates as an injunction against the commencement or continuation of an action ... [to] offset any [discharged] debt as a personal liability of the debtor.

Despite the relatively clear language of this section, some courts have held that a creditor may, under certain circumstances, offset a mutual claim against a discharged debtor. *See, e.g., In re Davidovich*, 901 F.2d 1533 (10th Cir.1990). In the present case, it is not necessary for this court to decide whether to adopt this rule. In their state court petition, the Bergers allege that TWA published "false, defamatory, libelous and slanderous statements, to-wit: that the Bergers dishonestly and fraudulently misappropriated moneys from TWA by shifting market share on non-TWA airlines from London to Latin." (D.I. 8, Attachment D at ¶ 18). This allegation of dishonest and fraudulent misappropriation forms the basis for TWA's count I. If TWA should prevail on count I, the Bergers' defamation claim will be extinguished. The claims, therefore, are not mutual, and any recovery the Bergers might theoretically win for their claim would not be properly characterized a set off. The Bergers might have brought their action, by their own testimony, at any time after October 1990, and their present attempt to characterize their claim as mutual, accordingly, will not avail to release them from the consequences of their neglect.

For these reasons, the court will affirm the bankruptcy court's order of October 31, 1994, denying the Bergers' motion to proceed.

## B. Bergers' Motion to Bar and London and Latin's Motion to Bar

Finally, the Bergers, London and Latin appeal the bankruptcy court's order denying their motions to bar the prosecution of TWA's state court claims against them. The pending state court action contains three counts, all predicated on the same alleged debt. In count I, TWA claims that the Bergers, London and Latin "fraudulently induced TWA to overpay commissions to London Travel and for the benefit of all defendants in the amount of $211,981.72." In count II, TWA alleges that the same sum "properly belongs to TWA, but was obtained by the Bergers and London Travel by means which make it unjust for said defendants to keep said money." In count III, TWA

charges that London breached its incentive agreements with TWA, which resulted in damage to TWA in the same amount. (D.I. 8, Attachment E, *seriatim*).

Section 521 of the Bankruptcy Code provides that "[t]he debtor shall[,] ... unless the court orders otherwise, [file] a schedule of assets and liabilities...." 11 U.S.C. § 521(1). The Bergers, London and Latin contend that TWA's state court claims should be held barred because, in violation of Section 521, TWA neither listed them among its assets in the schedules filed with the bankruptcy court nor amended those schedules to reflect the claims following the filing of its action in the Eastern District in April 1993.

The bankruptcy court, however, found that TWA "did properly include its ... claims against [the Bergers and London and Latin] among the assets in its schedules although not identifying the movants by name...." (D.I. 8, Attachment A). The court will not disturb this finding unless it is clearly erroneous. Nothing in the record as presented by appellants suggests such error. The court, accordingly, will affirm the bankruptcy court's order of October 31, 1994 denying the Bergers' and London and Latin's motions to bar.

## VI. CONCLUSION

For the foregoing reasons, the court will affirm the orders of the bankruptcy court issued October 31, 1994 denying the Bergers' motion to proceed, the Bergers' motion to bar, and London's and Latin's motion to bar.